**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| PRESIDIO MUNICIPAL DEVELOPMENT DISTRICT, | | |
| | *Plaintiff*, | |
| *v.* | | Case No. 1:26-cv-02146-RBW |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | | |
| | *Defendants*. | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR A STAY
UNDER 5 U.S.C. § 705 AND/OR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

I.       The Illegal Immigration Reform and Immigrant Responsibility Act ................................. 2

II.      The Secretary's Exercise of Waiver Authority ................................................................. 4

III.     The Big Bend 2 Project and Levee Wall Construction ...................................................... 4

IV.      Procedural History ............................................................................................................ 5

ARGUMENT ....................................................................................................................... 6

I.       Standard of Review ........................................................................................................... 6

II.      Plaintiff is not likely to succeed on the merits. ................................................................ 7

III.     Plaintiff will not suffer irreparable harm. ......................................................................... 9

IV.      The balance of the equities and public interest favors Defendants. ................................ 11

V.       Plaintiff's proposed relief is overly broad. ..................................................................... 13

CONCLUSION .................................................................................................................. 14

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Aamer v. Obama*,
   742 F.3d 1023 (D.C. Cir. 2014) ............................................................................................... 6

*Abdullah v. Obama*,
   753 F.3d 193 (D.C. Cir. 2014) ................................................................................................. 6

*Aviation Consumer Action Project v. Washburn*,
   535 F.2d 101 (D.C. Cir. 1976) ............................................................................................... 13

*Chaplaincy of Full Gospel Churches v. England*,
   454 F.3d 290 (D.C. Cir. 2006) ........................................................................................... 9, 10

*Cnty. of El Paso v. Chertoff*,
   No. EP-08-CA-196-FM, 2008 WL 4372693 (W.D. Tex. Aug. 29, 2008) ................................ 8

*Commonwealth of the N. Mariana Islands v. United States*,
   670 F. Supp. 2d 65 (D.D.C. 2009) ......................................................................................... 12

*Ctr. for Biological Diversity v. McAleenan*,
   404 F. Supp. 3d 218 (D.D.C. 2019) *cert. denied*, 591 U.S. 1015 (2020) ............................. 8, 9

*Ctr. For Biological Diversity v. Mullin,*
   No. 25-00365, 2026 WL 836278 (D. Ariz. Mar. 26, 2026) ...................................................... 8

*Ctr. for Biological Diversity v. Trump*,
   453 F. Supp. 3d 11 (D.D.C. 2020) ........................................................................................... 8

*Davis v. Pension Benefit Guar. Corp.*,
   571 F.3d 1288 (D.C. Cir. 2009) ............................................................................................... 6

*Defs. Wildlife v. Chertoff*,
   527 F. Supp. 2d 119 (D.D.C. 2007), *cert. denied*, 554 U.S. 918 (2008) ................................. 8

*Greater New Orleans Fair Hous. Action Ctr. v. HUD*,
   639 F.3d 1078 ...................................................................................................................... 7, 9

*Immigrant Defs. L. Ctr. v. Noem*,
   145 F.4th 972 (9th Cir. 2025) ................................................................................................. 14

*In re Border Infrastructure Env't Litig.*,
   284 F. Supp. 3d 1092 (S.D. Cal. 2018), *aff'd*, 915 F.3d 1213 (9th Cir. 2019), *cert. denied*, 586
   U.S. 1035 (2018) ...................................................................................................................... 8

*Kinney-Coastal Oil Co. v. Kieffer*,
  277 U.S. 488 (1928) .................................................................................................. 14

*Landon v. Plasencia*,
  459 U.S. 21 (1982) .................................................................................................... 12

*Lujan v. National Wildlife Federation*,
  497 U.S. 871 (1990) .................................................................................................... 9

*Make the Road New York v. Noem*,
  No. 25-5320, 2025 WL 3563313 (D.C. Cir. Nov. 22, 2025) ...................................... 14

*N. Am. Butterfly Ass'n v. Nielsen*,
  368 F. Supp. 3d 1 (D.D.C. 2019) (Leon, J.), *aff'd in part, rev'd in part and remanded*,
  977 F.3d 1244 (D.C. Cir. 2020) .................................................................................. 8

*Neguse v. U.S. Immigr. & Customs Enf't*,
  813 F. Supp. 3d 45 (D.D.C. 2025) ............................................................................... 6

*Nken v. Holder*,
  556 U.S. 418 (2009) .................................................................................................. 11

*Nuclear Regulatory Commission v. Texas*,
  605 U.S. 665 (2025) .................................................................................................... 9

*Save Jobs USA v. DHS*,
  105 F. Supp. 3d 108 (D.D.C. 2015) ............................................................................. 9

*Save Our Heritage Org. v. Gonzales*,
  533 F. Supp. 2d 58 (D.D.C. 2008) ............................................................................... 8

*Sherley v. Sebelius*,
  644 F.3d 388 (D.C. Cir. 2011) ................................................................................. 6, 7

*Sherley v. Sebelius*,
  689 F.3d 776 (D.C. Cir. 2012) .................................................................................... 6

*Sierra Club v. Ashcroft*,
  No. 04-272-LAB (JMA), 2005 WL 8153059 (S.D. Cal. Dec. 13, 2005)..................... 8

*Sierra Club v. Trump*,
  379 F. Supp. 3d 883 (N.D. Cal. 2019), *aff'd*, 963 F.3d 874 (9th Cir. 2020), *vacated and
  remanded*, 142 S. Ct. 42 (2021) .................................................................................. 8

*Sierra Club v. U.S. Army Corps of Eng'rs*,
  990 F. Supp. 2d 9 (D.D.C. 2013) ................................................................................. 9

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025) ............................................................................................... 14

*Va. Ry. Co. v. Sys. Fed'n No. 40*,
    300 U.S. 515 (1937) .............................................................................................. 11

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .................................................................................................... 6

*Wis. Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985) ............................................................................... 9

**<u>Statutes</u>**

5 U.S.C. § 705 ................................................................................................ 1, 5, 6, 14

33 U.S.C. § 403 *et seq.* .......................................................................................... 4

33 U.S.C. § 408 .............................................................................................. 1, 4, 7

Real ID Act of 2005,
Pub. L. No. 109-13, Div. B, Title I, § 102, 119 Stat. 231 .............................................. 3

Secure Fence Act of 2006,
    Pub. L. No. 109-367, 120 Stat. 2638 (codified at 8 U.S.C. § 1701) ..................................... 12

Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")
    Pub. L. No. 104-208, Div. C., Title I, § 102, 110 Stat. 3009 (codified at 8 U.S.C. § 1103 note)
    ................................................................................................ *passim*

**<u>Legislative Materials</u>**

H.R. Conf. Rep. No. 109-72 (May 3, 2005) ................................................................... 3

H.R. Rep. 114-840, 1147 (Nov. 30, 2016) (Conf. Rep.) ..................................................... 12

**<u>Regulations</u>**

*Determination Pursuant to Section 102 of IIRIRA, as Amended*,
    91 Fed. Reg. 7297 (Feb. 17, 2026) ..................................................................... 4, 7, 9

Exec. Order No. 14165, 90 Fed. Reg. 8467 (Jan. 20, 2025) ................................................. 13

## INTRODUCTION

Defendants U.S. Department of Homeland Security ("DHS"), Secretary of Homeland Security Markwayne Mullin, U.S. Customs and Border Protection ("CBP"), and CBP Commissioner Rodney S. Scott, file this response in opposition to Plaintiff's Motion for a stay under 5 U.S.C. § 705 and/or Preliminary Injunction ("Mot."), ECF No. 2.

Plaintiff's motion is based on a single claim alleging construction of border barriers near flood levees in south Texas violates of a provision of the Rivers and Harbors Act ("RHA"), 33 U.S.C. § 408. That claim has no likelihood of success because Secretary Mullin has waived application of the RHA pursuant to § 102 the Illegal Immigration Reform and Responsibility Act. Section 102 reflects Congress' determination that expeditious completion of border barriers is important enough to outweigh compliance with other laws—including environmental laws and others that can lead to protracted litigation. Over the past two decades, every judicial challenge to the Secretary's exercise of his waiver authority has been rejected, including by multiple judges in this District. This Court should reach the same conclusion and deny Plaintiff's Motion.

Plaintiff's Motion also fails on the remaining actors required for a preliminary injunction or a stay under 5 U.S.C. § 705. The government has a compelling interest in vigorous border security and enforcement of the Nation's immigration laws. DHS identified the border wall projects at issue here because of the high rates of illegal entries and drug smuggling in the United States Border Patrol Big Bend Sector in south Texas. An injunction preventing border barrier construction in this area would frustrate the government's ability to stop the flow of drugs and illegal border crossings and harm the public's interest. By contrast, Plaintiff asserts only speculative injuries that are insufficient to carry their heavy burden for preliminary relief. None of the recent pre-construction mobilization activity that Plaintiff describes has altered or impacted

any flood levees. DHS does not even have an approved construction plan for the border wall in the areas where the flood levees are located. Indeed, DHS is considering a design that would not involve any construction of border wall on or require modification to the levees. Even if such construction were to occur, DHS has plans to implement various well-established design and engineering features that will ensure the levees are stable, secure, and have the ability to withstand a 100-year flood event. If anything, DHS's proposed construction plan would almost certainly improve the condition and flood control capabilities of the levees beyond their current status.

For these reasons, as set forth below, Defendants respectfully request that the Court deny Plaintiff's Motion.

## BACKGROUND

## I.    The Illegal Immigration Reform and Immigrant Responsibility Act

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") requires the Secretary of the Department of Homeland Security to "take such actions as may be necessary to install additional physical barriers and roads (including the removal of obstacles to detection of illegal entrants) in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States." Pub. L. No. 104-208, Div. C, Title I, § 102(a), 110 Stat. 3009-554 (1996) (codified at 8 U.S.C. § 1103 note).  In addition to this broad mandate, Congress provided certain guidelines, including the following:

> In carrying out subsection (a), the Secretary of Homeland Security shall construct reinforced fencing along not less than 700 miles of the southwest border where fencing would be most practical and effective and provide for the installation of additional physical barriers, roads, lighting, cameras, and sensors to gain operational control of the southwest border.

IIRIRA § 102(b)(1)(A) (as amended). Congress also gave the Secretary freedom to determine whether the placement of security items was "the most appropriate means to achieve and maintain operational control over the international border." *Id*.

In addition to these guidelines, Congress provided two mechanisms to ensure expeditious barrier construction. First, Congress granted the Secretary "the authority to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to ensure expeditious construction of the barriers and roads under this section." *Id*. § 102(c)(1). Congress originally limited this provision to the Endangered Species Act and the National Environmental Policy Act, *see* Pub. L. No. 104-208, Div. C, Title I, § 102(c), but later expanded it to include "all legal requirements." Real ID Act of 2005, Pub. L. No. 109-13, Div. B, Title I, § 102(c)(1), 119 Stat. 231; *see also* H.R. Conf. Rep. No. 109-72, at 171 (May 3, 2005) (explaining "Congress' intent that the . . . waiver authority extends to any local, state or federal statute, regulation, or administrative order that could impede expeditious construction of border security infrastructure").

Second, Congress created a streamlined system of judicial review for challenges to the Secretary's waiver authority. It gave federal courts "exclusive jurisdiction" over such challenges and limited those challenges to allegations of a constitutional violation. IIRIRA §102(c)(2)(A). Legal challenges must be brought within 60 days, and the only appellate review is a certiorari petition to the U.S. Supreme Court. *Id*. § 102(c)(2)(B), (C). The conference report explained that the strictly limited review reflected the "Conferees' intent . . . to ensure that judicial review of actions or decisions of the Secretary not delay the expeditious construction of border security infrastructure, thereby defeating the purpose of the Secretary's waiver." H.R. Conf. Rep. No. 109-72 at 172.

3

## II.    The Secretary's Exercise of Waiver Authority

On February 17, 2026, then-Secretary Noem executed a waiver pursuant to § 102 of the IIRIRA that waived certain laws to facilitate expeditious construction of barriers and roads in the United States Border Patrol Big Bend Sector. *See Determination Pursuant to Section 102 of IIRIRA, as Amended*, 91 Fed. Reg. 7297 (Feb. 17, 2026). Secretary Mullin has executed an amendment to that Waiver on that sets aside the Rivers and Harbors Act, 33 U.S.C. § 403 *et seq.*, including 33 U.S.C. § 408.  The amended Waiver will be posted for public inspection by the Office of Federal Register on July 1, 2026. *Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended* (July 1, 2026), https://www.federalregister.gov/d/2026-13419 (also attached as Exhibit 2). It will be published in the Federal Register on July 2, 2026. Pursuant to the waivers, CBP will construct several barrier projects in the Big Bend Sector, including the Big Bend 2 project, which will construct approximately 61 miles of barrier system. *See* Declaration of Paul Enriquez Decl. ¶ 7 (attached as Exhibit 1).

## III.    The Big Bend 2 Project and Levee Wall Construction

As relevant to this suit, the Big Bend 2 project may include approximately 12.75 miles of levee wall construction in and around Presidio, Texas. *Id*. ¶ 10. Levee wall is a variety of border barrier that is incorporated into a flood control levee. *Id*. ¶ 10. It consists of a reinforced concrete levee wall that is constructed to match the height of the levee, coupled with 30-foot steel bollard panels that are installed on top of the levee.  *Id.* Levee wall enhances border security by providing persistent impedance against illegal entry. *Id.* It also provides flood protection, as the concrete levee wall functions like a traditional levee. *Id.*

CBP has extensive experience constructing, operating, and maintaining levee wall. *Id.* ¶ 11. As part of past border barrier projects, CBP has constructed over 100 miles of levee wall, primarily in the United States Border Patrol Rio Grande Valley Sector, in coordination with its federal partners, including the United States International Boundary and Water Commission ("USIBWC"), an international body composed of the United States and the Mexican officials responsible for applying the boundary and water treaties between the United States and Mexico. *Id.*

The construction contract for the Big Bend 2 project was awarded on March 5, 2026, with construction on the levee wall portion estimated to begin no earlier than August 2026. *Id.* ¶¶ 7, 20. Notably, however, there is no approved final design for the project. *Id.* Once CBP receives a proposed design from the construction contractor, it will perform its own analysis and consult with the USIBWC and the United States Army Corps of Engineers ("USACE"). *Id.* ¶ 18. CBP's consultation with USIBWC and USACE ensures, among other things, that the CBP-constructed levee wall meets the United States' treaty obligations, is structurally sound, provides continued flood protection for the local community, and is eligible for accreditation or certification by the Federal Emergency Management Agency ("FEMA"). *Id.* ¶ 16. CBP is also considering an alternative design that would not require alteration of the existing levees. *Id.* ¶ 15.

## IV. Procedural History

Plaintiff Presidio Municipal Development District filed this lawsuit on June 17, 2026, against the Department of Homeland Security, Markwayne Mullin in his official capacity as Secretary of Homeland Security, U.S. Customs and Border Protection, and Rodney S. Scott in his official capacity as Commissioner for Customs and Border Protection. *See* Compl., ECF No. 1. That same day, Plaintiff filed a motion for a preliminary injunction or stay under 5 U.S.C. § 705.

5

*See* Mot., ECF No. 2. Pursuant to the parties' joint motion, on June 24, 2026, the Court set a briefing schedule for Defendants' response and Plaintiff's reply. Order, ECF No. 12. Accordingly, Defendants' response is due July 1, 2026.

**ARGUMENT**

## I.      Standard of Review

5 U.S.C. § 705 permits a Court to "issue all necessary and appropriate process to postpone the effective date of an agency action . . . ." Similarly, a preliminary injunction is a "stopgap measure . . . intended to maintain a status quo . . . ." *Sherley v. Sebelius*, 689 F.3d 776, 781-82 (D.C. Cir. 2012). However, a "preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

"The same factors governing the issuance of relief under Section 705 also govern the issuance of a preliminary injunction." *Neguse v. U.S. Immigr. & Customs Enf't*, 813 F. Supp. 3d 45, 67 (D.D.C. 2025). Those factors are: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (citation modified). "[T]he movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Id.* (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009)); *Winter*, 555 U.S. at 32.

The Court of Appeals has emphasized that the "first and most important factor" is whether the moving party has "established a likelihood of success on the merits." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). "[W]hen a plaintiff has not shown a likelihood of success on

6

the merits, we need not consider the other factors." *Greater New Orleans Fair Hous. Action Ctr. v. HUD*, 639 F.3d 1078, 1089 (D.C. Cir. 2011).[1]

## II.   Plaintiff is not likely to succeed on the merits.

Plaintiff's Rivers and Harbors Act claim, 33 U.S.C. § 408, has no likelihood of success on the merits because the Secretary of Homeland Security waived the RHA requirements for the border barrier construction that will be executed in the Big Bend Sector. *Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended* (July 1, 2026), https://www.federalregister.gov/d/2026-13419 (also attached as Exhibit 2). The IIRIRA authorizes such a waiver in conjunction with the statutory directive that the Secretary of Homeland Security "take such actions as may be necessary" to install "physical barriers" on the "United States border to deter illegal crossings in areas of high illegal entry into the United States." IIRIRA § 102(a). That statutory mandate includes a directive requiring DHS to "construct reinforced fencing along not less than 700 miles of the southwest border." *Id.* § 102(b)(1)(A). The IIRIRA seeks to ensure expeditious construction pursuant to these mandates by waiving a broad array of legal impediments: "Notwithstanding any other provision of law, the Secretary of Homeland Security shall have the authority to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to ensure expeditious construction of the barriers and roads under this section." *Id.* § 102(c)(1).

Acting under that authority, on February 17, 2026, then-Secretary Noem exercised her authority to issue a waiver for the Big Bend Sector, *see* 91 Fed. Reg. 7297, and Secretary Mullin

---

[1] In *Sherley v. Sebelius*, 644 F.3d at 393 , the Court of Appeals noted that *Winter* called into question the "sliding-scale approach" to consideration of the preliminary injunction factors that had been the law of this Circuit. This Court need not decide any questions related to the continued viability of the sliding-scale test, however, because Plaintiffs have not shown a likelihood of success on the merits.

amended that waiver on July 1, 2026. *Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended* (July 1, 2026), https://www.federalregister.gov/d/2026-13419 (also attached as Exhibit 2). Relevant to this suit, the waived laws include the RHA. *Id*. As such, Plaintiff's only claim for preliminary relief, that Defendants' construction on the levees in the Big Bend Sector violates the RHA, has no likelihood of success.  *Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 35 (D.D.C. 2020) (dismissing environmental law claim "for the challenged border wall construction" because the Secretary waived the law at issue); *see In re Border Infrastructure Env't. Litig.*, 915 F.3d 1213, 1221 (9th Cir. 2019) ("[A] valid waiver of the relevant environmental laws under section 102(c) is an affirmative defense to all the environmental claims."); *see also N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1262 (D.C. Cir. 2020) (acknowledging plaintiff's concession that "[a] Waiver Determination, if lawful and effective, defeats its NEPA and ESA claims").

To the extent Plaintiff may challenge the Secretary's Amended Waiver, any such claims are meritless. Every court to review a waiver under the IIRIRA has found it to be constitutional. *See Ctr. for Biological Diversity v. Noem*, No. 25-00365-TUC-AMM, 2026 WL 836278 (D. Ariz. Mar. 26, 2026); *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d 1092 (S.D. Cal. 2018), *aff'd*, 915 F.3d 1213 (9th Cir. 2019), *cert. denied*, 586 U.S. 1035 (2018); *Sierra Club v. Trump*, 379 F. Supp. 3d 883, 922-23 (N.D. Cal. 2019), *aff'd*, 963 F.3d 874 (9th Cir. 2020), *vacated and remanded*, 142 S. Ct. 42 (2021); *Cnty. of El Paso v. Chertoff*, No. EP-08-CA-196-FM, 2008 WL 4372693 (W.D. Tex. Aug. 29, 2008); *Sierra Club v. Ashcroft*, No. 04-272-LAB (JMA), 2005 WL 8153059 (S.D. Cal. Dec. 13, 2005). In particular, multiple judges of this District have found the IIRIRA wavier authority constitutional on numerous occasions. *See Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218 (D.D.C. 2019) (Jackson, J.), *cert. denied*, 591 U.S. 1015

(2020); *N. Am. Butterfly Ass'n v. Nielsen*, 368 F. Supp. 3d 1 (D.D.C. 2019) (Leon, J.), *aff'd in part*, *rev'd in part and remanded*, 977 F.3d 1244 (D.C. Cir. 2020); *Save Our Heritage Org. v. Gonzales*, 533 F. Supp. 2d 58 (D.D.C. 2008) (Lamberth, J.); *Defs. of Wildlife v. Chertoff*, 527 F. Supp. 2d 119 (D.D.C. 2007) (Huvelle, J.), *cert. denied*, 554 U.S. 918 (2008). As then-Judge Jackson concluded, "from the standpoint of what suffices as guidance from Congress regarding how the Executive Branch is to exercise the authority granted in the statute for constitutional purposes, what is set forth in subsections 102(a) and 102(c) is enough." *Ctr. for Biological Diversity*, 404 F. Supp. 3d at 249.

Because Plaintiff cannot succeed on the merits of the RHA claim, Plaintiff's motion should be denied on that basis alone. *See Greater New Orleans Fair Hous. Action Ctr.*, 639 F.3d at 1088.[2]

## III.   Plaintiff will not suffer irreparable harm.

"The irreparable injury requirement erects a very high bar for a movant." *Sierra Club v. U.S. Army Corps of Eng'rs*, 990 F. Supp. 2d 9, 38 (D.D.C. 2013) (citation modified); *see also Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("This court has set a high standard for irreparable injury."); *Save Jobs USA v. DHS*, 105 F. Supp. 3d 108, 112

---

[2] Because Plaintiff's RHA claim fails on the merits, there is no need for the Court to address whether that statutory claim can be asserted through the cause of action in the Administrative Procedure Act or through an implied equitable *ultra vires* cause of action. Defendants dispute that a proper APA claim is available here in light of the Secretary's waiver of the APA, *see* 91 Fed. Reg. at 7298, and the absence of final agency action, *see Lujan v. National Wildlife Federation*, 497 U.S. 871, 875 (1990). Further, as then-Judge Jackson concluded, "Congress has made it abundantly clear that Plaintiffs' *ultra vires* claims cannot proceed in federal court." *Ctr. for Biological Diversity*, 404 F. Supp. 3d at 235-42. Even setting that clear statutory restriction aside, Plaintiff also has not shown that it falls within the narrow circumstances for *ultra vires* claims as recently explained by the Supreme Court *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025). Regardless of which, if any, cause of action may be available to assert an RHA claim challenging border wall construction, the merits of that claim fails under any appliable standard because of Secretary's waiver.

9

(D.D.C. 2015) ("The standard for irreparable harm is particularly high in the D.C. Circuit."). "The party seeking injunctive relief must demonstrate that the claimed injury is 'both certain and great' and that the alleged harm is 'actual and not theoretical.'" *Sierra Club*, 990 F. Supp. 2d at 38-39 (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Moreover, "the injury complained of [must be] of such *imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm[,]" and any injury must be "beyond remediation." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (citation modified).

Plaintiff claims that Defendants are "barreling ahead" with construction, putting it at risk of imminent harm. Not so. No construction activity has begun on the levees near Presidio, nor is it likely to begin imminently. The construction activity Plaintiff claims to have spotted around Presidio, *see* Mot. at 10-11, is merely "general construction mobilization and preparation" for the entire Big Bend 2 project, not specifically for the levee portion. Enriquez Decl. ¶ 21. Similarly, various surveys have been conducted, but those are merely part of the design process, not part of any active construction activity. *Id*.

Plaintiff also claims that Defendants' construction activities near Presidio will damage the levees and therefore put it at risk of injury from flooding. *See* Mot. at 12. This could not be further from the truth. To begin with, any claim of injury is entirely speculative because Defendants do not have a final design plan for the border wall construction near the levees. Enriquez Decl. ¶ 15. Indeed, one of the alternatives that is being considered by CBP is a traditional bollard barrier design that would be placed behind the existing levees, *i.e.*, a border barrier design that would not involve any construction on or modification to the levees. *Id*.

Even if CBP were to decide to construct levee border wall in the Big Bend 2 project area, CBP has extensive experience in constructing levee walls using appropriate safety and engineering

techniques to guard against Plaintiff's alleged harms. Since 2007, CBP has constructed over 100 miles of levee wall, most of which has been in the United States Border Patrol Rio Grande Valley Sector. *Id*. ¶ 11. To prepare and design those projects, CBP always coordinates with the USIBWC and USACE which "ensures . . . that the CBP-constructed levee wall meets the United States' treaty obligations, is structurally sound, provides continued flood protection for the local community, and is eligible for accreditation or certification by the Federal Emergency management Agency []." *Id.* ¶ 16. That is true for this project as well. Both USIBWC and USACE participate in bi-weekly calls with CBP. *Id.* ¶ 17. The construction contractor will prepare a design using hydraulic and hydrologic analysis and modeling, but once CBP receives that design, USIBWC and USACE will likely perform their own modeling and analysis. *Id.* ¶ 18. Finally, CBP's final design will ensure that the levees can be accredited and certified by FEMA, which requires designs built to withstand a 100-year flood event, a notable increase over the current levees, which are only designed to withstand a 25-year flood event. *Id*. ¶ 23.

In case there is any doubt that Presidio will not be harmed, CBP is working with it particularly in mind. The USIBWC and USACE analysis will particularly evaluate potential impacts on the levees operated by Presidio County. *Id.* ¶ 18. CBP also regularly meets with Presidio County officials to provide updates and opportunities for local input. *Id.* ¶ 19. Given the meticulous planning and design of the levee walls, it is unlikely that Plaintiff will be irreparably harmed absent a stay or preliminary injunction.

**IV.    The balance of the equities and public interest favors Defendants.**

The final two preliminary injunction factors, the public interest and the balance of the equities, weigh against granting Plaintiff's motion. These factors merge when the Government is a party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Through IIRIRA § 102, Congress has

spoken in the plainest of words that "expeditious construction" of additional border infrastructure takes precedence over other public policy interests. *See Va. Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 551-52 (1937) (courts "cannot ignore the judgment of Congress, deliberately expressed in legislation," which is "a declaration of public interest and policy which should be persuasive"). There can be no doubt that the southwest border remains an area of "high illegal entry," § 102(a), requiring additional DHS action. Plaintiffs cite various sources to argue "undocumented border crossings are relatively few" in the Big Bend Sector. *See* Mot. at 25. But the word "relatively" plays a key role in that sentence. As noted in both waivers, Congress has mandated DHS to achieve and maintain operational control of the international land border. Secure Fence Act of 2006, Pub. L. No. 109-367, § 2, 120 Stat. 2638 (Oct. 26, 2006) (codified at 8 U.S.C. § 1701 note). Congress defined "operational control" as the prevention of all unlawful entries into the United States, including entries by terrorists, other unlawful aliens, instruments of terrorism, narcotics, and other contraband. *Id.* Both waivers note that between fiscal years 2021 and 2025, CBP apprehended over 89,000 illegal aliens" in the Big Bend Sector. Enriquez Decl. ¶ 27. These numbers demonstrate that smugglers regularly try to exploit the Big Bend Sector, and the lack of border barrier infrastructure within the Big Bend Sector makes it harder for DHS to achieve operational control of the border. *Id*. Given these high numbers, enjoining the construction of border barriers would harm the Government's weighty interest in border security and enforcement of immigration laws. *See Commonwealth of the N. Mariana Islands v. United States*, 670 F. Supp. 2d 65, 87-88 (D.D.C. 2009) (recognizing "weighty and legitimate" federal interests in "ensur[ing] . . . effective border control procedures" because "a sovereign's interests in foreign affairs and security are served by controlling the borders over which it possesses sovereignty"); *Landon v. Plasencia*, 459

12

U.S. 21, 34 (1982) ("The government's interest in efficient administration of the immigration laws at the border . . . is weighty.").

Moreover, Congress has recognized that additional border infrastructure can help curtail the flow of "narcotics, and other contraband[,]" that are a menace to public safety. Pub. L. No. 109-367, § 2(b) (defining "operational control" of the border). As the President recently explained, the United States' southern border is a potential entry point for "terrorists, foreign spies, members of cartels, gangs, . . . violent transnational criminal organizations, . . . other hostile actors with malicious intent . . . . [and] deadly narcotics and other illicit materials." Exec. Order No. 14165, 90 Fed. Reg. 8467  (Jan. 20, 2025). Between fiscal years 2021 and 2025, CBP seized over 87,574 pounds of marijuana, 867 pounds of cocaine, 1,156 pounds of methamphetamine, 12 pounds of heroin, and 94 pounds of fentanyl in the Big Bend Sector. Enriquez Decl. ¶ 27. In these circumstances, a preliminary injunction prohibiting the construction of additional border infrastructure would harm the public's interest in border security and public safety.

Finally, entering an injunction or stay could significantly harm the government's financial interests. Plaintiff requests an injunction or stay of CBP's entire planned construction in the Big Bend Sector. *See* Proposed Order. If the Court entered such an order, it would force CBP to issue "stop work orders" to all construction contractors in that Sector, which in turn could leave it liable for delay claims and costs incurred from demobilization and remobilization of the contractors. *Id*. ¶ 25.

## V.      Plaintiff's proposed relief is overly broad.

For the reasons stated above, the Court should deny Plaintiff's motion in its entirety. If, however, the Court were to disagree, it nevertheless should reject Plaintiff's excessively broad proposed order. "Injunctive relief granted to a party in a lawsuit must be framed to remedy the

harm claimed by the party . . . . [and] must be narrowly tailored to remedy the specific harm shown." *Aviation Consumer Action Project v. Washburn*, 535 F.2d 101, 108 (D.C. Cir. 1976).  The Supreme Court has explained that a "universal injunction . . . falls outside the bounds of a federal court's equitable authority under the Judiciary Act." *Trump v. CASA, Inc.*, 606 U.S. 831, 847 (2025). At most, a court "may administer complete relief between the parties" and should not go beyond that to enjoin action or implementation more broadly. *Id*. at 851 (quoting *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 507 (1928) (emphasis omitted)).  These considerations apply equally to both injunctions and stays under Section 705 of the APA.  *See Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 995-96 (9th Cir. 2025) ("limit[ing] [a] district court's § 705 Stay order" to a plaintiff's clients on the basis that *CASA*'s "complete-relief principle . . . provides some useful guidance for crafting interim equitable relief" in § 705 cases, which use the same traditional equitable principles that govern the preliminary injunctions at issue in *CASA*.).[3]

Plaintiff proposes an order staying or preliminarily enjoining "Defendants' construction of a 'Smart Wall' in the U.S. Customs and Border Protection's Big Bend Sector.  Proposed Order. Yet Plaintiffs claims only arise from the small 12.75 mile stretch of levee wall construction in the Big Bend 2 project area. If the Court grants Plaintiff's requested relief, the Court's order should be narrowly tailored to that specific project area. There is no basis to stop construction activity in other locations that are not before this Court and do not injure Plaintiffs.

---

[3] Although the D.C. Circuit has held that stay relief under Section 705 applies beyond the plaintiffs before the court in a particular lawsuit, *see Make the Road New York v. Noem*, No. 25-5320, 2025 WL 3563313, at *36 (D.C. Cir. Nov. 22, 2025), that principle does not address whether any stay in this case should stop construction activity miles away the narrow area giving rise to Plaintiff's alleged injury.

**CONCLUSION**

For the reasons explained above, the motion for preliminary injunction or stay should be denied.

Dated: July 1, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Alexander J. Yun*
ALEXANDER J. YUN (D.C. Bar No. 90028923)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202-674-0255
Alex.Yun@usdoj.gov

*Counsel for Defendants*

15