# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE  DISTRICT OF COLUMBIA**

<table>
<tr>
<td>

THE PRESIDIO MUNICIPAL DEVELOPMENT DISTRICT

       *Plaintiffs,*

   *v.*

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, *et al.*

       *Defendants.*

</td>
<td>

Civil Action No. 26-cv-02146 (RBW)

</td>
</tr>
</table>

**DECLARATION OF PAUL ENRIQUEZ**

I, Paul Enriquez, declare as follows:

1. I am the Director, Infrastructure Portfolio, U.S. Border Patrol Program Management Office Directorate ("PMOD"), U.S. Customs and Border Protection ("CBP"), an agency of the Department of Homeland Security ("DHS").  I have held this position since January 2023 and support the planning and execution of border infrastructure projects from construction to maintenance.  From May 2021 to December 2022, I served as the Deputy Director for the Infrastructure Portfolio.  From August 2018 to May 2021, I served as the Real Estate and Environmental Director for the Infrastructure Portfolio.  From 2013 to August 2018, I was the Real Estate and Environmental Branch Chief for the Border Patrol and Air and Marine Program Management Office ("BPAM"), Facilities Management and Engineering, Office of Facilities and Asset Management.  From 2011 to 2013, I was employed as an Environmental

Protection Specialist in the BPAM office.  In that role, I performed environmental analyses for various border infrastructure projects.  From 2008 to 2011, I was a contractor assigned to the BPAM office and provided environmental support on various border infrastructure projects.

2.  CBP is the DHS component with primary responsibility for border security.  CBP constructs, operates, and maintains border infrastructure necessary to deter and prevent illegal entry on the southern border.

3.  Within CBP, PMOD has expertise in managing and executing border infrastructure projects.  PMOD is tasked with managing the schedule, finances, real estate acquisition, environmental planning, and construction of the border infrastructure system along the U.S. border.

4.  Based upon my current and past job duties, I am familiar with the funding appropriated to CBP for barrier system construction and CBP's planned and on-going border barrier construction on the southern border, including the border barrier construction at issue in this litigation.

5.  This declaration is based on my personal knowledge and information made available to me in the course of my official duties.

## BIG BEND 2 PROJECT

6.  CBP has multiple border barrier system projects that will be executed in the United States Border Patrol Big Bend Sector (the "Big Bend Sector").  Among the border barrier system projects that will be executed in the Big Bend Sector is a project known as Big Bend 2.  The project area for the Big Bend 2 project  is shown on the map attached as Exhibit A.

7.  As part of the Big Bend 2 project, CBP will construct approximately 61 miles of barrier system.  The contract for the Big Bend 2 project was awarded on March 5, 2026.  The Big Bend 2 project will be executed with funding provided by Congress as part of the One Big Beautiful Bill Act, Pub. L. No. 119-21, tit. IX, § 90001 (1)-(3), 139 Stat. 72, 357-58 (2025).

8.  On February 17, 2026, a waiver to facilitate the expeditious construction of barrier system and roads in the Big Bend Sector was published in the Federal Register.  91 Fed. Reg. 7297

(February 17, 2026). The waiver was executed by then-Secretary Noem pursuant to § 102 of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, div. C, tit. I, § 102(c), 110 Stat. 3009-546, 3009-554 (1996) (codified as amended at 8 U.S.C. § 1103 note). The waiver covered multiple barrier system projects, including Big Bend 2.

9. The Secretary of Homeland Security has executed an amendment to the February 17, 2026 waiver, which as noted covers multiple barrier system projects, including the Big Bend 2 project. The amended waiver sets aside the Rivers and Harbors Act, 33 U.S.C. § 403 *et seq*., including 33 U.S.C. § 408. The amended waiver was posted for public inspection by the Office of Federal Register on July 1, 2026. Available at: https://www.federalregister.gov/d/2026-13419. It will be published in the Federal Register on July 2, 2026.

## LEVEE WALL CONSTRUCTION AS PART OF BIG BEND 2

10. The Big Bend 2 project may include approximately 12.75 miles of levee wall construction. Levee wall is a variety of border barrier that is incorporated into a flood control levee. It consists of a reinforced concrete levee wall that is constructed to match the height of the levee, coupled with steel bollard panels that are installed on top of the levee. The total combined height of the levee wall is 30 feet. Because the concrete levee wall is constructed to match the height of the levee, the height of the steel bollards may vary to account for the total combined height of 30 feet. Levee wall enhances border security by providing persistent impedance against illegal entry. It also provides flood protection, as the concrete levee wall functions like a traditional levee.

11. CBP constructed its first segments of levee wall between 2007 and 2008 in the United States Border Patrol Rio Grande Valley Sector. CBP has extensive experience constructing, operating, and maintaining levee wall. As part of past border barrier projects, CBP has constructed over 100 miles of levee wall, primarily in the United States Border Patrol Rio Grande Valley Sector, in coordination with its federal partners, including the United States

International Boundary and Water Commission ("USIBWC"), an international body composed of the United States and the Mexican officials responsible for applying the boundary and water treaties between the United States and Mexico.

12. The approximately 12.75 miles of levee wall that may be constructed as part of the Big Bend 2 project are situated in and around Presidio, Texas. A map showing the locations where CBP may construct levee wall as part of the Big Bend 2 project is attached hereto as Exhibit B.

13. As depicted on the map that is attached as Exhibit B there are two varieties of levees in the area where CBP may construct levee wall as part of the Big Bend 2 project: (1) the levees that make up the Presidio Flood Control Project ("PFCP"), which are owned and managed by USIBWC; and (2) the Cibolo Creek Levees, which were constructed by United States Army Corps of Engineers ("USACE") and are operated by Presidio County. As is also depicted in the attached map, CBP's contemplated levee wall work in the Big Bend 2 project area will be exclusively on the PFCP levees that are owned and managed by USIBWC. There is no construction activity that is planned for, ties into, or intersects with the USACE-constructed Cibolo Creek Levees.

## DESIGN AND CONSTRUCTION STATUS

14. Plaintiff's suggestions that construction of the levee wall as portion of the Big Bend 2 project is imminent, that CBP is foregoing advanced engineering reviews of the levee wall, failing to coordinate with key federal partners such USIBWC and USACE, and ignoring local stakeholders, Compl. ¶¶ 57 – 62; Kennedy Decl. ¶¶ 54-55, 57-62, are inaccurate. There is no imminent construction activity planned for the levee wall portion of the Big Bend 2 project. CBP is actively engaging USIBWC and USACE and meets regularly with local stakeholders, including Presidio County officials. The construction activity that has been observed near Presidio is not specific to the levee wall portion of the Big Bend 2 project. It is generalized construction mobilization that is required for the entirety of the Big Bend 2 project. None of the recent mobilization activity in Big Bend 2 project area has altered or impacted any levees.

A. **Design**

15. Although CBP has awarded a contract for the Big Bend 2 project, the construction contractor has not yet provided, nor has CBP approved, a final design for the levee wall portion of the Big Bend 2 project. Construction cannot begin until there is a final, approved design. In fact, as part of the design process, one of the alternatives that is being considered by CBP is a traditional bollard barrier design that would be placed closer to the river or behind the existing levees, i.e., a border barrier design that would not involve any construction on or modification to the levees. Thus, CBP may forego the levee wall portion of the Big Bend 2 project and instead build traditional bollard barrier closer to the river or behind the existing PFCP levees. Any such decision would be made after further evaluation and consultations with the contractor.

16. As is the case with every levee wall design, CBP is working in close coordination with both USIBWC and USACE. CBP's consultation with USIBWC and USACE ensures, among other things, that the CBP-constructed levee wall meets the United States' treaty obligations, is structurally sound, provides continued flood protection for the local community, and is eligible for accreditation or certification by the Federal Emergency Management Agency ("FEMA").

17. Plaintiff's suggestion that there is no meaningful or substantive consultation or coordination between CBP and USIBWC and USACE is both unfair and inaccurate. Both USIBWC and USACE are participating in CBP's bi-weekly project planning calls, and CBP is keeping both updated on its project planning. More importantly, as is the case with every design review, the most meaningful and substantive engagement between the parties occurs *after* CBP's construction contractor delivers a proposed design, something that has not occurred yet.

18. Once CBP receives a proposed design from its construction contractor, it will share the proposed design with both USACE and USIBWC. As part of its design work, the construction contractor is required to produce hydraulic and hydrologic ("H&H) analysis and modeling of the proposed design. In addition to the design, the H&H reports and modeling will be shared

with USIBWC and USACE.  CBP expects that, as was the case with past levee wall design processes, USIBWC and USACE may conduct their own H&H modeling, which will also be used to evaluate the proposed design of the levee wall.  Using all the available information, the parties will then consult on any changes that may be required to the design, whether the design meets the United States' treaty obligations, is structurally sound, provides the necessary flood protection for the community, and is eligible for accreditation and certification from FEMA.  Contrary to what is suggested by Plaintiff, the design review will also examine potential impacts to the integrity and continued functionality of the Cibolo Creek Levees. Kennedy Decl. ¶ 45.

19. In addition to its close coordination with USIBWC and USACE, CBP, as noted by Plaintiff, has actively sought input from the public.  In addition to public outreach, CBP holds bi-weekly meetings with local officials, including Presidio County Commissioners, Judges, and the Presidio County Sheriff, where CBP provides regular project updates and gives local officials the chance to ask questions or provide input.  Most recently on June 30, 2026 CBP hosted a meeting with the Mayor, County Judge, and County Commissioner  to discuss the potential levee design  and alternative alignments of the barrier that would not involve construction of a levee wall.

## B.  Construction

20. As noted, construction of the levee wall cannot begin until there is a final, approved design. Based on the current project schedule, the earliest CBP estimates it could start work on the levee wall portion of the Big Bend 2 project is August 2026; however, that estimated construction start date is very tentative.  It is contingent on completing and approving a design and finalizing any real estate agreements or acquisitions that are required for the levee wall portion of the Big Bend 2 project.

21. Regarding the construction activity described in Plaintiff's complaint, it is general construction mobilization and preparation.  It is required for the entirety of the Big Bend 2

project. It is not specific to any levee wall portion of the Big Bend 2 project. As to the survey activity that Plaintiff states has been observed near the PFCP levees, Kennedy Decl. ¶ 33, the construction contractor placed markers on federal property near the PFCP levees. The markers were used for the aerial surveys that were taken by the contractor. The results of the aerial surveys inform the design process described above. None of the recent activity in Big Bend 2 project area has altered or impacted any levees.

## ALLEGED HARMS

22. Plaintiff alleges that construction of levee wall could undermine the structural integrity of the PFCP levees, alter the flow of the water through the Rio Grande, and make the PFCP levees more vulnerable to flash flooding or levee failure. Kennedy Decl. ¶¶ 43-44. Plaintiff further notes that failure of the PFCP levees could have significant consequences for the local community, including Plaintiff's main asset, the Presidio Industrial Park. *E.g.*, Kennedy Decl. ¶¶ 59-61, 12-13.

23. These alleged harms are speculative. This is evidenced by the fact that, as Plaintiff admits, the expert reports cited in its Motion do not analyze CBP's levee wall design for the Big Bend 2 project area. Motion at pg. 11. Rather, the expert reports that are cited by Plaintiff to articulate its alleged harms examine Smart Wall (rather than levee wall) construction on "separate" segments of the Rio Grande, including a segment that is "100 miles upstream of Presidio." *Id.* More importantly, CBP understands that modification to the PFCP levees as part of levee wall construction has the potential to alter the flow of water through the Rio Grande. CBP also understands the importance of maintaining the PFCP levees' flood control capabilities. That is precisely why CBP engages in the detailed design review described above—a design review process that CBP has used for the close to 20 years it has been constructing levee wall. In fact, there is good reason to believe that levee wall construction could improve the flood protection capabilities of the PFCP levees. Plaintiffs state that the PFCP levees are built to withstand a 25-year flood event. Kennedy Decl. ¶ 23. Because the CBP levee wall will be designed to ensure it can receive accreditation and certification from

FEMA, it will be designed to withstand a 100-year flood event. Moreover, as part of its coordination with its federal partners, CBP has been advised that, given current state of the PFCP levees, CBP's levee wall would almost certainly improve the condition and flood control capabilities of the PFCP levees.

24. Plaintiff alleges that the "mere increase in flood risk and uncertainty" is harming its negotiations with prospective tenants of Industrial Park. Plaintiffs further allege that the "mere presence" of border barrier "dampens" developers' opinions of the "character and stability" of Presidio. Motion at pg. 15. Plainly, CBP cannot control the speculative concerns of prospective Industrial Park tenants. As stated above, the alleged "increase in flood risk" is purely speculative. Moreover, construction of border barrier system will improve border security, thereby enhancing the safety and security of the local community. Thus, concerns about the "character and stability" of Presidio appear to be misplaced.

## HARMS TO THE GOVERNMENT

25. If the Court were to issue an injunction, it could result in substantial harms to the government. Most significantly, it would impose significant administrative burdens and financial harms. As stated above, the levee wall is just one portion of the Big Bend 2 project. Plaintiff, however, has not simply asked the Court to issue an injunction covering the levee wall portion of the Big Bend 2 project. Rather, Plaintiff has asked the Court to enjoin "construction of 'Smart Wall' in U.S. Customs and Border Protection's Big Bend Sector." Proposed Order. CBP currently has multiple barrier system projects in the Big Bend Sector, including the Big Bend 1, Big Bend 2, Big Bend 3, Big Bend 4, and Big Bend 5 projects. Collectively, they account for 550 miles of border barrier construction and over $7.3 billion in construction contracts that have already been awarded. If the Court issues an injunction, CBP would be required to issue stop work orders to the construction contractors who are already performing on various aspects of these contracts, including planning, design, mobilization, and construction. In turn, CBP could become liable for sizeable delay claims, as well as the sizeable costs incurred by its contractors to de-mobilize and re-mobilize if or when work was

allowed to continue.

26. Even if the injunction were limited to the levee wall portion of the Big Bend 2 project, an injunction could still result in substantial harm to the government. Here again, CBP could be required to pause or descope portions of the Big Bend 2 contract, which, in turn, could result in delay claims or other increased costs from the contractor.

27. In addition to harming the government, enjoining CBP from further construction of border barrier or levee barrier in the Big Bend Sector will harm the general public. As stated in the IIRIRA waivers that were issued for the Big Bend border barrier system projects, the Big Bend Sector is an area of high illegal entry. Between fiscal year 2021 and fiscal year 2025, Border Patrol apprehended over 89,000 illegal aliens attempting to enter the United States between border crossings in the Big Bend Sector. In that same time period Border Patrol seized over 87,574 pounds of marijuana, over 867 pounds of cocaine, over 1,156 pounds of methamphetamine, over 12 pounds of heroin, and over 94 pounds of fentanyl. 91 Fed. Reg. 7297. Though apprehension numbers in the Big Bend Sector may have declined recently, as also stated in the IIRIRA waivers, the statistics cited above show that illegal aliens and drug smugglers regularly try to exploit the Big Bend Sector. The lack of border barrier infrastructure within the Big Bend Sector makes it harder for Border Patrol to achieve operational control of the border. Thus, if CBP is unable to construct additional border barrier system and roads in the Big Bend Sector, it will remain an area that can be exploited by illegal aliens and drug smugglers and it risks a return to the levels of illegal entry and smuggling activity that was seen in prior fiscal years.

***

This declaration is made pursuant to 28 U.S.C. § 1746.  I declare under penalty of perjury that

the foregoing is true and correct.

Executed on this 1st day of July, 2026.

PAUL R
ENRIQUEZ

Digitally signed by PAUL R
ENRIQUEZ
Date: 2026.07.01 14:25:21
-04'00'

Paul Enriquez
Infrastructure Portfolio Director
Program Management Office Directorate
U.S. Border Patrol

# Exhibit A: Big Bend 2 Project Area

*Overview*

## LEGEND

🚗 Ports of Entry

**Proposed Alignment**

〰 Primary Vertical Wall System

**State Land**

State Land

**Federal Land**

National Park Service Land

*"If sheet measures less than 11"x17" it is a reduced print. Reduce scale accordingly.*

1:343,000          1:343,000

*BIG BEND SECTOR*

MEXICO

☐ AREA ENLARGED

**WARNING:** This document is **FOR OFFICIAL USE ONLY (FOUO).** It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information and is not be released to the public or other personnel who do not have a valid "need-to-know" without prior approval of an authorized DHS official.

Chinati Mountains

Maria Station
Presidio Station

Maria Station
Alpine Station

Presidio Station
Alpine Station

Big Bend Ranch

Redford

Olivença

Cañengo Vicha

Presidio Station

Cuchillo Parado

Map Request 1220          June 24, 2026

# Exhibit B: Big Bend 2 Levee Alignments

## LEGEND

⬛ Ports of Entry

**Proposed Wall Alignment**
- Primary Vertical Wall System

**Levee Alignment**
- IBWC Maintained Levee
- USACE Maintained Levee

**State Land**
- State Land

*"If sheet measures less than 11x17" it is a reduced print. Reduce scale accordingly.*

1:68,000

*Overview*

**WARNING:** This document is **FOR OFFICIAL USE ONLY (FOUO)**. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). It is to be controlled, stored, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to FOUO information and is not be released to the public or other personnel who do not have a valid "need-to-know" without prior approval of an authorized DHS official.

Map Request 1208        June 17, 2026

Loma Pelona — FM 170 — Presidio — Presidio POE — Progreso — US Highway 67 — Carretera Ojinaga - El Mulato — El Mulato — Soles — Las Lomas — Magisterial — Francisco Villa — Ojinaga — Porfirio Ornelas — Cañada Ancha — Avenida Camargo — La Esmeralda — Tierras Nuevas — Carretera Chihuahua - Ojinaga — 16