UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PRESIDIO MUNICIPAL DEVELOPMENT DISTRICT,<br><br>           Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; U.S. CUSTOMS AND BORDER PROTECTION; and RODNEY S. SCOTT, in his official capacity as Commissioner for Customs and Border Protection,<br><br>           Defendants. | **Case No. 26-cv-2146** |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF
REGARDING ENCOUNTERS AND SEIZURES IN THE BIG BEND SECTOR**

On July 27, 2026, the Government filed its Supplemental Brief Regarding Encounters and Seizures in the Big Bend Sector. *See* Defs.' Supp. Mem., Dkt. No. 18. Plaintiff Presidio Municipal Development District writes briefly in response to raise four points.

First, to the extent the Government claims that "an inquiry into the need to build border barriers exceeds the Court's authority," as even it acknowledges, such an inquiry is appropriate where, as here, the Court weighs the balance of equities in connection with a claim for preliminary relief. Defs.' Supp. Mem. at 1. The Government's concerns are only implicated where a plaintiff brings a statutory challenge to the Secretary's exercise of waiver authority. *See* REAL ID Act of 2005, Pub. L. No. 109-13, sec. 102, § 102(c)(1), (2)(A), 119 Stat. 302, 306 (2005) (codified at 8

1

U.S.C. § 1103 note).[1] Where, as here, a plaintiff's claims do not challenge a waiver and the waiver issued after plaintiff filed suit, the Secretary's waiver determination is not preclusive. *Compare N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1250 (D.C. Cir. 2020) (finding "IIRIRA's jurisdiction-stripping provision" does not apply where "the DHS Secretary had not yet exercised her statutory [waiver] authority" at the time of suit), *with Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218, 240 (D.D.C. 2019) (finding court lacked jurisdiction to decide statutory claims that directly "challenge the propriety or lawfulness" of a waiver issued prior to suit). That is because a plaintiff's "claims cannot 'aris[e] from' a post-claim . . . [w]aiver [d]etermination." *N. Am. Butterfly Ass'n*, 977 F.3d at 1260 (first alteration in original) (quoting IIRIRA § 102(c)(2)(A)). Rather, the post-suit waiver functions as an affirmative defense, *id.*, and a court may decide the case's merits—including any argument that the waiver does not properly apply to the plaintiff's claims, *see id.* at 1262–63. *See also In re Border Infrastructure Env't Litig.*, 915 F.3d 1213, 1221 (9th Cir. 2019) (where plaintiff raised "claims *before* the Secretary published the . . . [w]aivers, . . . the waivers could not possibly have been the source of [such] claims" and rather operate as "an affirmative defense"). For these reasons, no party actually disputes jurisdiction or the Court's ability to consider the balance of equities. *See* July 21, 2026 Tr. at 45:5-6 ("Mr. Yun: We do not dispute jurisdiction for this case.").

Second, and as to that balance, the Government's filing underscores that undocumented crossings have plummeted since 2022. *See* Defs.' Supp. Mem. Ex. A at 2, Dkt. No. 18-1. That

---

[1] Specifically, IIRIRA provides that "[t]he district courts of the United States shall have exclusive jurisdiction to hear all causes or claims arising from any action undertaken, or any decision made, by the Secretary of Homeland Security pursuant to [the waiver authority]. A cause of action or claim may only be brought alleging a violation of the Constitution of the United States. The court shall not have jurisdiction to hear any claim not specified in this subparagraph." IIRIRA § 102(c)(2)(A).

steep drop has continued even between fiscal years 2025 and 2026 alone; as CBP's website indicates, as compared to FY2025, there has been a -40.7% change in year-to-date encounters in the Big Bend Sector, and encounters remain among the lowest in the entire border region. *See Southwest Land Border Encounters (By Component)*, CBP (July 16, 2026), https://perma.cc/BT78-STLD.

While the Government concedes that "encounters in the Big Bend Region are down significantly due to the robust enforcement efforts of the current Administration," it nonetheless speculates that the border wall is necessary because "they may spike again in the future." Defs.' Supp. Mem. at 2. The Government provides no reason to believe that such an increase in immigration is likely to occur during the relatively short duration of any preliminary relief here or why existing enforcement efforts would be insufficient to address it. To the contrary, CBP recently represented that it "has established meaningful border security resulting in sustained deterrence of illegal crossings," that "the sustained decline in illegal border crossings and apprehensions—now at levels not seen in over three decades—shows the profound impact of robust enforcement policies," and that "the border remains more secure than at any point in history." *Trump administration delivers 14 straight months of zero releases at the border*, CBP (July 17, 2026), https://perma.cc/692Y-LBBA. Nor do "historical trends show the continued need for construction of a border wall in this area," as the Government claims, Defs.' Supp. Mem. at 2. At no point prior to 2025—even during periods of relative "spike[s]" in crossings—did the Government determine that wall construction in the Big Bend Sector was necessary for border security.

Third, regarding the Government's drug-related data, the chart they provide is replete with errors. For every single fiscal year listed, the "total pounds" row fails to match the sum of the individual rows listing drug seizures. Regardless, it is clear from CBP's public website that the

vast majority of drug seizures in the Big Bend Sector are for marijuana. *See Drug Seizure Statistics*, CBP (July 16, 2026), https://perma.cc/KZ93-G4P4; *see also United States v. Hemani*, 146 S. Ct. 1677, 1693 (2026) (recognizing that "there now may be more adults in this country who regularly use marijuana than consume alcohol" and rejecting the claim that "the millions of Americans who now regularly use marijuana are categorically and unusually dangerous"); *id.* at 1701 (Alito, J., concurring) (noting that marijuana use is "widespread and increasingly considered socially acceptable" and that "law enforcement widely tolerates [its] use"). It is also clear that drug seizures in the Big Bend Sector are lower than other border regions. *See* Pl.'s PI Reply at 16, Dkt. No. 16.

Defendants also have not explained how these (relatively few) drugs are even coming into the Big Bend Sector. They have not demonstrated that drugs are being smuggled across the border through undocumented crossings, as opposed to, *e.g.*, being hidden in cars passing through border checkpoints or sent via mail. In fact, CBP's website indicates that its drug data includes interdictions at "ports of entry"—which would include drugs brought in through airports. *Stats and Summaries*, CBP (June 25, 2026), https://perma.cc/BGA5-HH3Y. As such, the record is devoid of any evidence that border-wall construction in Big Bend would reduce illegal drug flow.

Finally, while the Government claims that delay would cause harm because "[b]order barrier construction projects frequently require years of extensive planning, analysis, and construction," Defs.' Supp. Mem. at 3, Plaintiff notes that the preliminary relief it seeks would not prevent Defendants from engaging in the "extensive planning [and] analysis" it claims necessary during the pendency of litigation.

For these reasons, and those further described in its briefing, Plaintiff maintains that the balance of equities and public interest overwhelmingly favor a stay or injunction that prevents Defendants from taking action that increases flood risks to Presidio.

Dated: July 28, 2026

Respectfully submitted,

/s/ Laura B. Bakst
Laura B. Bakst (DC Bar No. 1782054)
Louis Katz (DC Bar No. 90003861)
Ayesha Khan (DC Bar No. 426836)
Brian Netter (DC Bar No. 979362)
Skye L. Perryman (DC Bar No. 984573)
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
lbakst@democracyforward.org
lkatz@democracyforward.org
akhan@democracyforward.org
bnetter@democracyforward.org
sperryman@democracyforward.org

*Counsel for Plaintiff*

5