**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| PRESIDIO MUNICIPAL | ) | |
| DEVELOPMENT DISTRICT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 26-2146 (RBW) |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF HOMELAND SECURITY, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

The plaintiff, Presidio Municipal Development District ("PMDD"), brings this action

against the United States Department of Homeland Security ("DHS"); Markwayne Mullin, in his

official capacity as the Secretary of Homeland Security (referred to as "the Secretary,"

"Secretary Mullin," or "Secretary of DHS"); the United States Customs and Border Protection

("CPB"); and Rodney S. Scott, in his official capacity as Commissioner for the CPB (collectively

"the defendants). Complaint ("Compl.") at 1–2, ECF No. 1. The plaintiff alleges that the

defendants' construction of a United States/Mexico border "Smart Wall"[1] in the Big Bend

Region[2] of Texas, a remote area in Southwest Texas, located along the Rio Grande river, violates

the Rivers and Harbors Act ("RHA"), 33 U.S.C. § 408, and is therefore in violation of the

Administrative Procedures Act ("APA"), 5 U.S.C. § 705, or in the alternative, is <u>ultra vires</u>. See

---

[1] According to Director Paul Enriquez, an employee of CPB, the "Smart Wall" "includes a steel bollard wall, along with roads, detection technology, cameras, lighting and in some cases waterborne barrier or a secondary wall – creating a double layer barrier." Compl., Exhibit ("Ex.") A (Letter from Paul Enriquez, Director, Infrastructure Portfolio, U.S. Border Patrol to John T. Kennedy, Executive Director, PMDD ("CPB Letter") at 1, ECF No. 1-8.

[2] The Big Bend region is comprised of "Presidio County, along with Brewster and Jeff Davis Counties[.]" Declaration of John T. Kennedy ("Kennedy Decl.") ¶ 10, ECF No. 2-2.

id. ¶¶ 1–4, 14–16, 83–96.  The plaintiff alleges that "[t]his massive wall will run straight through the [United States] . . . Section of the International Boundary and Water Commission" ("IBWC") and "will replace the earthen slope of the existing levee with a concrete wall, with 30-foot steel bollard panels installed on top."  Complaint ¶ 1.  The plaintiff asks the Court to "enter a stay under 5 U.S.C. § 705 and/or preliminary injunction under Rule 65(a) of the Federal Rules of Civil Procedure barring [the d]efendants from constructing the Big Bend Segment of the 'Smart Wall.'"  Plaintiff's Motion For A Stay Under 5 U.S.C. § 705 And/Or Preliminary Injunction ("Pl.'s Mot.") at 1–2, ECF No. 2  The defendants oppose the plaintiff's motion, arguing that the "claim has no likelihood of success because Secretary Mullin has waived application of the RHA pursuant to § 102 [of] the Illegal Immigration Reform and Immigrant Responsibility Act" of 1996 ("IIRIRA").  Defendants' Response To Plaintiff[']s[] Motion For A Stay Under 5 U.S.C. § 705 And/Or Preliminary Injunction ("Defs.' Opp'n") at 1, ECF No. 13 (citing Pub. L. No. 104-208, § 102, 110 Stat. 3009–554 (1996) (codified at 8 U.S.C. § 1103 note)).

Currently pending before the Court is the plaintiff's motion for stay and/or a preliminary injunction.  See generally Pl.'s Mot.  Upon careful consideration of the parties' submissions,[3] the

---

[3] In addition to the filings already identified, the Court considered the following submissions in rendering its decision:  (1) Compl., Ex. B (Letter from Tony Frye, Deputy Commissioner, United States Section of IBWC to John T. Kennedy (Apr. 30, 2026) ("IBWC Letter")), ECF No. 1-9; (2) Compl., Ex. C (Letter from Matthew Miller, Lieutenant Colonel, U.S. Army Corps of Engineers to John T. Kennedy (May 11, 2026) ("Miller Letter")), ECF No. 1-10; (3) Memorandum In Support Of Plaintiff's Motion For A Stay Under 5 U.S.C. § 705 And/Or Preliminary Injunction ("Pl.'s Mem."), ECF No. 2-1; (4) Declaration of John T. Kennedy ("Kennedy Decl."), ECF No. 2-2; (5) Pl.'s Mem., Ex. A ("Presidio Municipal Development District Resolution"), ECF No. 2-3; (6) Pl.'s Mem., Ex. B (Formal Public Comment of the Presidio Municipal Development District Regarding the Big Bend Border Barrier System ("Formal Public Comment")), ECF No. 2-4; (7) Pl.'s Mem., Ex. C (Letter from R.S. Johnson, Geoscientist, Magnet Geological Re: Technical Opinion Regarding Long-Term Border Wall Durability in Flash-Flood Terrain Downstream of the Viejo Mountains, Southwest Texas (May 6, 2026) ("Magnet Geological Letter")), ECF No. 2-5; (8) Pl.'s Mem., Ex. D (Rio Grande International Study Center, Executive Summary (Mar. 11, 2026) ("Rio Grande Executive Summary")), ECF No. 2-6; (9) Pl.'s Mem., Ex. E (Letter from John Ferguson, Mayor, Presidio, Texas and John T. Kennedy to W.C. McIntosh, Commissioner, United States Section, IBWC and Paul S. Enriquez (Apr. 30, 2026) ("Joint Letter from Presidio to USIBWC")), ECF No. 2-7; (10) Pl.'s Mem., Ex. F (Email from Paul Enriquez to John Fergusion and John. T. Kennedy (May 28, 2026) ("Enriquez Email")), ECF No. 2-8; (11) Defs.' Opp'n, Ex. 1 (Declaration of Paul Enriquez ("Enriquez Decl.")), ECF No. 13-1; (12) Defs.' Opp'n, Ex. 2 (July 2, 2026 Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of

(continued . . .)

Court concludes that it must deny the plaintiff's motion because the plaintiff has failed to show a likelihood of succeeding on the merits.

## I.    BACKGROUND

### A.    Statutory Background

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 authorizes "DHS to 'deter illegal crossings in areas of high illegal entry into the United States' by 'tak[ing] such actions as may be necessary to install additional physical barriers and roads (including the removal of obstacles to detection of illegal entrants) in the vicinity of the United States border[.]'" N. Am. Butterfly Ass'n v. Wolf ("NABA"), 977 F.3d 1244, 1249 (D.C. Cir. 2020) (internal brackets omitted) (quoting IIRIRA § 102(a)).  In 1996, "in order to facilitate swift construction of [ ] new border barriers, Congress authorized the Attorney General of the United States to waive otherwise-applicable provisions of two environmental statutes—the Endangered Species Act of 1973 ('ESA'), 16 U.S.C. §§ 1531–44, and the National Environmental Policy Act of 1969 ('NEPA'), 42 U.S.C. §§ 4321, to the extent necessary, as determined by the Attorney General." Center for Biological Diversity v. McAleenan, 404 F. Supp. 3d 218, 224 (D.D.C. 2019) (internal brackets and quotations omitted) (citing IIRIRA § 102(c)).

Then, in 2005, Congress passed an emergency supplemental bill which, among other things, amended the IIRIRA and allowed the Secretary of Homeland Security "to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to ensure

___

(. . . continued)
1996, as Amended ("Copy of July 2 Waiver")), ECF No. 13-2; (13) Reply Memorandum In Support Of Plaintiff's Motion For A Stay Under 5 U.S.C. § 705 And/Or Preliminary Injunction ("Pl.'s Reply"), ECF No. 16; (14) Transcript of July 21, 2026 Motion Hearing ("Hr'g Tr."); (15) Supplemental Brief Regarding Encounters And Seizures In The Big Bend Sector ("Defs.' Suppl."), ECF No. 18; (16) Plaintiff's Response To Defendants' Supplemental Brief Regarding Encounters And Seizures In The Big Bend Sector ("Pl.'s Resp."), ECF No. 19; (17) Email from redacted sender to Rebecca Rizzuti (April 1, 2026) ("Rizzuti Email") (provided to the Court at the July 21, 2026 motion hearing).

expeditious construction of the barriers and roads under [the IIRIRA]." REAL ID Act of 2005, Pub. L. No. 109–13, § 102(c)(1), 119 Stat. 302, 306 (2005) (codified at 8 U.S.C. § 1103(c)(1) note) (emphasis added).[4] This emergency supplemental bill also specified when and how judicial review of the Secretary of Homeland Security's decision to "waive all legal requirements" is permitted. In that regard, the statute provides:

> (2) FEDERAL COURT REVIEW.—
>      (A) IN GENERAL.—The district courts of the United States shall have exclusive jurisdiction to hear all causes or claims arising from any action undertaken, or any decision made, by the Secretary of Homeland Security pursuant to paragraph (1). A cause of action or claim may only be brought alleging a violation of the Constitution of the United States. The court shall not have jurisdiction to hear any claim not specified in this subparagraph.
>      (B) TIME FOR FILING OF COMPLAINT.—Any cause or claim brought pursuant to subparagraph (A) shall be filed not later than 60 days after the date of the action or decision made by the Secretary of Homeland Security. A claim shall be barred unless it is filed within the time specified.
>      (C) ABILITY TO SEEK APPELLATE REVIEW.—An interlocutory or final judgment, decree, or order of the district court may be reviewed only upon petition for a writ of certiorari to the Supreme Court of the United States.

Id. § 102(c)(2).

Additionally, in 2006, Congress passed the Secure Fence Act of 2006, which mandated that "the Secretary of Homeland Security shall take all actions the Secretary determines necessary and appropriate to achieve and maintain operational control over the entire international land . . . of the United States[.]" See Secure Fence Act of 2006, Pub. L. No. 109-367, § 2, 120 Stat. 2638, 2638 (2006) (codified at 8 U.S.C. § 1701 note). Congress defined "operational control" as "the prevention of all unlawful entries into the United States, including entries by terrorists, other unlawful aliens, instruments of terrorism, narcotics, and other

---

[4] The provision states in full: "[n]otwithstanding any other provision of law, the Secretary of Homeland Security shall have the authority to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to ensure expeditious construction of the barriers and roads under this section. Any such decision by the Secretary shall be effective upon being published in the Federal Register." IIRIRA § 102(c)(1).

4

contraband." Id. § 2(b). Moreover, Congress specified that the Secretary of DHS's action should include "more effective use of personnel and technology, such as unmanned aerial vehicles, ground-based sensors, satellites, radar coverage, and cameras; and [ ] physical infrastructure enhancements to prevent unlawful entry by aliens . . . , such as additional checkpoints, all weather access roads, and vehicle barriers." Id. § 2(a)(1)–(2). In section 3 of the Secure Fence Act, Congress again amended the IIRIRA, expanding the priority areas along the border for construction of border barriers. See id. § 3.

Relevant to the resolution of the plaintiff's motion, in February of 2026, pursuant to the authority in the amended IIRIRA, and "[c]onsistent with . . . the President's Executive Order on Securing Our Borders[,]" Exec. Order No. 14165, 90 Fed. Reg. 8467 (Jan. 20, 2025), former Secretary of Homeland Security Kristi Noem "waive[d] in their entirety, with respect to the construction of physical barriers and roads" approximately twenty-seven environmental and conservation statutes. See Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 91 Fed. Reg. 7297–98 (Feb. 17, 2026). This "include[ed] all federal, state, or other laws, regulations, and legal requirements of, deriving from, or related to the subject of" such statutes, to further the construction of "additional barriers and roads in the Big Bend Sector" of Texas. Id. Then, effective July 2, 2026, current Secretary Mullin similarly waived "in their entirety," numerous environmental and conservation statutes, regulations, and other laws,[5] including the Rivers and Harbors Act of 1899, 33 U.S.C. §§ 403–67. See Determination Pursuant to Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as Amended, 91 Fed. Reg. 40550–51 (July 2, 2026) (hereinafter referred to as the "July 2 Waiver").

---

[5] Curiously, although not at issue in this case, former Secretary Noem and current Secretary Mullin also waived "the Administrative Procedure Act (5 U.S.C. 551 et seq.)." See 91 Fed. Reg. at 7298; 91 Fed. Reg. at 40551.

Subsection (a) of the Rivers and Harbors Act of 1899, which is titled "[p]rohibitions and permissions," provides that

> [i]t shall not be lawful for any . . . persons to . . . build upon, alter . . . obstruct by fastening vessels thereto or otherwise, or in any manner whatever impair the usefulness of any . . . levee . . . or other work built by the United States, or . . . used in the construction of such work under the control of the United States, in whole or in part, for the preservation and improvement of any of its navigable waters or to prevent floods[.]

33 U.S.C. § 408(a). However, § 408(a) further states that there is no prohibition against doing any of the above enumerated actions if the Secretary of the Army grants permission for the temporary or permanent occupation or use when, in his or her judgment, he or she finds that "such occupation or use will not be injurious to the public interest and will not impair the usefulness of such work." Id.[6]

## B.    Factual Background

The plaintiff "is a political subdivision of the State of Texas" that serves the "area encompass[ing] the City of Presidio," with "a population of approximately 4,000 people." Complaint ¶¶ 5, 7; Kennedy Decl. ¶ 10.[7] The plaintiff also owns "approximately 400 acres of" "the Presidio Industrial Park, located in and adjacent to the City of Presidio." Kennedy Decl. ¶ 12. Presidio sits "inside the deep bend of the Rio Grande" river in Southwest Texas. Pl.'s Mem. at 2. It is "two miles upstream" of the Rio Conchos river, and south of the Cibolo Creek and is also located in the Big Bend Sector of Southwest Texas. Id. Because Presidio is located close to these bodies of water, it is "home to a complex levee system that protects the area from

---

[6] According to the plaintiff, "the Section 408 process would include a technical analysis that would assess whether and to what extent the border-wall construction would impact the levees, their structural integrity, flood conveyance, and/or flood-fighting abilities." Kennedy Decl. ¶ 58.

[7] Specifically, the plaintiff's "service area encompasses the City of Presidio, its extraterritorial jurisdiction (covering an area within one mile of the city limits), and adjacent areas of Presidio County." Kennedy Decl. ¶ 9.

mass flooding." Id.; see Kennedy Decl. ¶¶ 16–17 (same), ¶ 59 ("The entire City of Presidio sits behind the [Presidio Flood Control Project (")PFCP[")] and Cibolo Creek levees."). The levee system is composed of two main parts: (1) "PFCP[] [,which] was authorized by the U.S.-Mexico Boundary Treaty of 1970" and (2) the "IBWC[]—a binational body responsible for applying the boundary and water treaties between the U.S. and Mexico." Id. at 2–3; Kennedy Decl. ¶ 17–18. The IBWC "continues to manage the PFCP." Pl.'s Mem. at 3.

"The PFCP works by channeling the Rio Grande [river] through [approximately 15 miles of] berms and earthen levees on both sides to keep the river swell from flooding surrounding land" and "provides flood protection to approximately 52 square miles of urban and agricultural land in Presidio." Id.; Kennedy Decl. ¶ 19. "The PFCP also includes two parallel spur levees along the Cibolo Creek, known as the north and south Cibolo Creek levees." Pl.'s Mem. at 3; Kennedy Decl. ¶ 19. The plaintiff also explains that "the U.S. Army Corps of Engineers (['] USACE[']) built two additional levees on the Cibolo Creek . . . . in 1982 to further reduce flood damage in Presidio." Id.; Kennedy Decl. ¶ 20 (adding that "[m]any homes lie behind the Cibolo Creek levees").

After President Trump took office in 2025 and ordered the defendants to "construct temporary and permanent physical barriers to ensure complete operational control of the southern border of the United States," the defendants "renewed construction of a 'Smart Wall'" Id. at 4–5 (citing Exec. Order No. 14165, 90 Fed. Reg. at 8467)). "The 'Smart Wall' is 'comprised of a steel bollard wall or waterborne barrier, along with roads, detection technology, cameras and lighting and in some cases a secondary wall.'" Id. at 5. As discussed above, both former Secretary Noem and current Secretary Mullin, in February and July 2026, respectively, waived the requirements of a host of environmental and other regulatory requirements to

7

expedite the construction of the "Smart Wall" pursuant to IIRIRA § 102(c)(1). See id. at 6–7.

Additionally, as discussed above, Secretary Mullin's waiver, effective July 2, 2026, specifically

waived the requirements of the RHA, which provides certain protections for levees before any

person may "build upon, alter, deface, destroy, move, injure, obstruct by fastening vessels

thereto or otherwise, or in any manner whatever impair the usefulness of" such levee. See 33

U.S.C. § 408(a).

The plaintiff alleges that the defendants "are barreling ahead with their planned

construction of the 'Smart Wall[,]'" Pl.'s Mem. at 8, despite "some of the lowest" levels of

"undocumented [people] crossing[] in the Big Bend area[,]" Kennedy Decl. ¶ 24. The plaintiff

further alleges that the defendants plan to construct "175 miles of primary border

barrier[,] . . . which will consist of 30-foot high six-inch-squared diameter steel bollards, spaced

approximately four inches apart with anti-climb features[,]" Pl.'s Mem. at 8 (internal quotations

omitted), without obtaining permission from "the Secretary of the Army, on the recommendation

of the Chief of Engineers[,]" see § 408(a); Pl.'s Mem. at 11 (arguing that "to date the USACE

has not been formally engaged by DHS, CBP, or any contractor regarding proposed construction

on or adjacent to the Presidio Flood Control Project") (internal brackets omitted). The plaintiff's

declarant, Executive Director and Registered Agent of the Presidio Municipal Development

District John T. Kennedy, declares that "[b]ased on [his] professional experience in infrastructure

programs, flood-control systems, and water/wastewater operations, a project of this magnitude

would typically undergo a substantial engineering review, including a hydraulic and/or

hydrologic assessment." Kennedy Decl. ¶ 48. Mr. Kennedy also represents that despite the

plaintiff's "repeated attempts to obtain information about what, if any, concrete efforts [the

defendants] have taken to ensure that construction will not undermine the safety or efficacy of

8

the Presidio levees[,]" the plaintiff remains concerned about the risk "that border wall construction" could have on the "Presidio levees and [ ] the region." Id. ¶ 52.

However, the plaintiff concedes that actual construction of the "Smart Wall" has not yet begun, and that the defendants are only preparing for such construction. See Pl.'s Mem. at 9–11 (explaining that residents of Presidio "received letters in February 2026 notifying them that [the defendants] 'may need to enter [their] property[,]'" that the defendants informed the press that installation of the actual border wall panels in the Big Bend Sector is scheduled to begin in late summer or early fall, and that the defendants' "project is in the design phase or early construction activities have begun[,]" etc.); see Kennedy Decl. ¶¶ 27–34 (describing alleged anticipatory construction-related actions the defendants or their contractors have taken in and around Presidio). Additionally, "the U.S. Section of the IBWC [,which] typically [receives] . . . hydraulic models for [its] review[] when the proposed structures are located within the Rio Grande floodplain[,] . . . has not yet received any designs for review for border barrier segments within the Big Bend Sector" from the defendants, although the plaintiffs acknowledge that the defendants have kept the U.S. Section of the IBWC "informed of its plans." Kennedy Decl. ¶ 55 (internal brackets omitted) (citing IBWC Letter at 1–2).

The defendants represent that "[t]he construction contract for the Big Bend 2 project was awarded on March 5, 2026, with construction on the levee wall portion estimated to begin no earlier than August 2026." Defs.' Opp'n at 5 (citing Enriquez Decl. ¶¶ 7, 20). However, the defendants explain that "there is no approved final design for the project[,]" and "[o]nce [the defendants] receive[] a proposed design from the construction contractor, [they] will perform [their] own analysis and consult with the USIBWC and the [USACE]." Id. According to the

9

defendants, they are "also considering an alternative design that would not require alteration of the existing levees." Id.

### A. Procedural Background

On June 17, 2026, the plaintiff filed its Complaint. See generally Compl. The same day, the plaintiff also filed its motion for a stay and/or a preliminary injunction. See generally Pl.'s Mot. The defendants filed their opposition to the plaintiff's motion on July 1, 2026, see generally Defs.' Opp'n, and on July 10, 2026, the plaintiff filed its reply. See generally Reply Memorandum In Support Of Plaintiff's Motion For A Stay Under 5 U.S.C. § 705 And/Or Preliminary Injunction ("Pl.'s Reply"), ECF No. 16. The parties appeared before the Court for a hearing on the plaintiff's motion for a stay and/or a preliminary injunction on July 21, 2026.

## II.    STANDARD OF REVIEW

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." Fed. Comm'n v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009). A court must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Additionally, § 705 of the APA authorizes courts to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." The factors the Court considers in determining whether a stay pursuant to § 705 of the APA shall issue are the same factors the Court considers in determining whether a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 shall issue. See Coalition for Independent Technology Research v. Rubio, 26-cv-815 (JEB), 2026 WL 2030770, *5 (July 14, 2026) ("Requests for relief under 5 U.S.C.

§ 705 are evaluated under the same standards as requests for preliminary injunctions") (citing Cuomo v. NRC, 772 F.2d 972, 974 (D.C. Cir. 1985)).

"A preliminary injunction is an 'extraordinary remedy[.]'" Archdiocese of Washington v. Wash. Metro. Area Transit Auth., 897 F.3d 314, 321 (D.C. Cir. 2018) (quoting Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 165 (2010)). "The moving party must make a 'clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest.'" Id. (quoting League of Women Voters v. Newby, 838 F.3d 1, 6 (D.C. Cir. 2016)); see Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (noting that a preliminary injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief"). The most important of the four factors is whether a movant has established a likelihood of success on the merits, see Aamer v. Obama, 742 F.3d 1023, 1038 (D.C. Cir. 2014), and, "a failure to show a likelihood of success on the merits alone is sufficient to defeat a preliminary-injunction motion[,]" Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs, 205 F. Supp. 3d 4, 26 (D.D.C. 2016) (citing Ark. Dairy Coop. Ass'n v. U.S. Dep't of Agric., 573 F.3d 815, 832 (D.C. Cir. 2009)).

### III.    ANALYSIS

The plaintiff challenges the defendants' pre-waiver actions under the APA, and in the alternative, argues that their actions are ultra vires. Pl.'s Mem. at 16. The plaintiff contends that "[t]he Big Bend Sector construction violates the [RHA] by interfering with the Presidio levees without USACE permission[, and that the defendants'] actions are contrary to law under the APA. Id. Specifically, the plaintiff argues that its "claims challenge the [defendants'] decision to construct a 'Smart Wall' in the Big Bend in violation of Section 408(a) [of the RHA], not the

July 2 Waiver, which did not even exist at the time [the plaintiff] filed its [C]omplaint[,]" Pl.'s Reply at 7; see also Pl.'s Mem. at 21 (arguing that "the prohibition of [the d]efendants['] interfering with the Presidio levees without U.S. Army approval stems from the RHA, not the APA"). The plaintiff alleges that the "[d]efendants' conduct is actionable under the APA because there has been a final agency action[,]" Pl.'s Mem. at 18, and "[s]ection 408(a) [of the RHA] is not waivable under [s]ection 102(c)(1) of the [IIRIRA], because it is not a 'legal requirement' within the meaning of the statute," Pl.'s Reply at 2. The defendants do not seem to grapple with the plaintiff's pre-waiver claims, but instead argue that the plaintiff "has no likelihood of success on the merits because the Secretary of Homeland Security waived the RHA requirements for the border barrier construction that will be executed in the Big Bend Sector." Defs.' Opp'n at 7 (citing July 2 Waiver); see Pl.'s Reply at 2 (arguing the "[d]efendants' entire likelihood-of-success argument rests on a single claim: that DHS's mid-litigation waiver excuses its obligation to comply with Section 408(a)").

Before addressing the merits of the plaintiff's claims, the Court must first determine whether it has subject-matter jurisdiction to consider the plaintiff's claims. See Kaplan v. Cent. Bank of the Islamic Republic of Iran, 896 F.3d 501, 511 (D.C. Cir. 2018) ("With regard to subject-matter jurisdiction, a court must assure itself of the existence of subject-matter jurisdiction before reaching the merits regardless of whether a party raises a jurisdictional challenge."); Cohen v. United States, 650 F.3d 717, 723 (D.C. Cir. 2011) ("The APA—a federal law—provides a 'generic cause of action in favor of persons aggrieved by agency action,' though it is not an independent source of jurisdiction" (quoting Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Servs., 763 F.2d 1441, 1445 n.1 (D.C.Cir.1985)); Trudeau v. Fed. Trade

12

Comm'n, 456 F.3d 178, 185 (D.C.Cir.2006) ("[T]he APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action.").

Therefore, the Court will first briefly discuss whether it has jurisdiction to entertain the plaintiff's pre-waiver claims, and if it can, the Court will then determine whether the plaintiff's claims may be assessed on the merits despite Secretary Mullin's July 2 Waiver. Ultimately, the Court finds that although it has jurisdiction to consider the plaintiff's pre-waiver claims, the Court must nevertheless find that the plaintiff has not demonstrated its likelihood of success on the merits due to the Secretary of DHS's July 2 Waiver. And, because the plaintiff is unlikely to succeed on the merits of its claim, the Court need not decide the other three Winter preliminary injunction factors. See Nat'l Treasury Employees Union v. Vought, 149 F.4th 762, 774 (D.C. Cir. 2025) ("[I]f a court concludes that a claim fails as a matter of law—on a point of jurisdiction or merits—then a preliminary injunction is inappropriate.").

## A.    Jurisdiction

### 1.    Final Agency Action

5 U.S.C. § 704 states that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." Courts have understood agency action to be final when "the action [ ]marks the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." Bennett v. Spear, 520 U.S. 154, 177–78 (1997) (internal quotations and citations omitted). Additionally, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Id. at 177–78 (internal quotations and citations omitted). "In other words, an agency action is final if, as the Supreme Court has said, it is 'definitive' and has a 'direct and immediate . . . effect on the day-to-day business' of the party

challenging it." National Ass'n of Home Builders v. U.S. Army Corps of Engineers, 417 F.3d 1272, 1278 (D.C. Cir. 2005) (quoting Fed. Trade Comm'n v. Standard Oil Co., 449 U.S. 232, 239 (1980)).

The plaintiff contends that there has been final agency action based on the alleged "[e]xtensive evidence demonstrat[ing] that [the defendants] have made a final decision to build a border wall in the Big Bend Sector." Pl.'s Mem. at 19. At the July 21, 2026 hearing on the plaintiff's motion, the plaintiff provided the Court with a copy of an email from one of the defendants' employees who stated that "[t]he river side of the earthen levee will be replaced with a concrete levee wall with the bollard panels mounted to the top of the concrete wall." Rizzuti Email at 1 (emphasis added). The defendants do not refute that there has been final agency action, but merely contend that "because [the d]efendants do not have a final design plan for the border wall construction near the levees," any claim of irreparable harm "is entirely speculative." Defs.' Opp'n at 10. For purposes of its jurisdiction, the Court is satisfied that final agency action has occurred for the reasons detailed below.

The RHA § 408(a) provides broad protections to levee systems. The provision states that:

> [i]t shall not be lawful for any . . . persons to take possession of or make use of for any purpose, or build upon, alter, deface, destroy, move, injure, obstruct by fastening vessels thereto or otherwise, or in any manner whatever impair the usefulness of any . . . levee . . . or other work built by the United States, or . . . used in the construction of such work under the control of the United States, in whole or in part, for the preservation and improvement of any of its navigable waters or to prevent floods, . . . nor remove for ballast or other purposes any stone or other material composting such works. Provided, That the Secretary of the Army may, on the recommendation of the Chief of Engineers, grant permission for the temporary occupation or use of any of the aforementioned public works when in his judgment such occupation or use will not be injurious to the public interest: Provided further, That the Secretary may, on the recommendation of the Chief of Engineers, grant permission for the alteration or permanent occupation or use of any of the aforementioned public works when in

14

the judgment of the Secretary such occupation or use will not be injurious to the public interest and will not impair the usefulness of such work.

33 U.S.C. § 408(a). Thus, the statute provides that even "impair[ing] the usefulness of any . . . levee . . . in whole or in part" is prohibited, unless prior permission is given by the Secretary of the Army. Id. Although the defendants argue that "[n]o construction activity has begun on the levees near Presidio," and they "do not have a final design for the border wall construction near the levees[,]" Defs.' Opp'n at 10, they explain that "one of the alternative[] [designs] that is being considered . . . is a traditional bollard barrier design that would be placed behind the existing levees, i.e., a border barrier design that would not involve any construction on or modification to the levees[,]" id. However, because the Court does not understand the defendants to be arguing that even their alternative design(s) will not "impair the usefulness of any . . . levee," § 408(a), the Court finds that the defendants have "consummate[ed their] decisionmaking process" for the purpose of its final agency action analysis. Bennett, 520 U.S. at 178; see Liquid Energy Pipeline Ass'n v. Fed. Energy Regul. Comm'n, 109 F.4th 543, 549 (D.C. Cir. 2024) ("[W]hether an agency action is final as to a particular party for purposes of seeking judicial review is a distinct question from whether an agency action is final for purposes of triggering the APA's procedural requirements.").

Additionally, the Court finds that the defendants' decision will have an "effect on the day-to-day business of the" plaintiff. National Ass'n of Home Builders, 417 F.3d at 1278 (internal quotations omitted). Depending on the ultimate design the defendants adopt for the construction of the wall, the plaintiff alleges that it "could undermine the levee's structural integrity, including leaving it more vulnerable to erosion, leakage, high-water levels, levee failure, and flash flooding[.]" Pl.'s Mem. at 12 (citing Kennedy Decl. ¶¶ 44, 47). The plaintiff also contends that "[c]hanges to the PFCP levee . . . [could] push water up the Cibolo Creek",

15

which could inhibit it "from draining" or "increase[e] pressure on the hydraulically connected Cibolo Creek left and right levees." Id. (citing Kennedy Decl. ¶ 45). Moreover, the plaintiff attests that the "levees protect the entire City of Presidio and its residents, and flooding would threaten lives, homes, businesses, and infrastructure[,]" by "damage[ing] highways and railroads[,] . . . causing water quality problems[,]" disrupting trade, "threaten[ing the plaintiff]'s . . . Presidio Industrial Park[,]"[8] and frustrate the plaintiff's development opportunities. Id. at 13–14 (citing Kennedy Decl. ¶¶ 12–13, 59–61, 65–69); see National Ass'n of Home Builders, 417 F.3d at 1280 (finding that agency action that can "affect the investment and project development choices of th[e appellants] activities" imposes an obligation, denies a right, or fixes some legal relationship). Due to the nature of the agency action in this case, see id. at 1279 ("the finality inquiry is a pragmatic and flexible one") (internal quotations omitted), the plaintiff need not wait until the defendants commence construction on the levees to ask the Court to review the agency's decision, see id. (holding that the agency's decision to require telephone companies to show their entitlement to certain costs was suitable for judicial review before any telephone company was denied costs); cf. Sabre, Inc. v. Dep't of Transp., 429 F.3d 1113, 1119 (D.C. Cir. 2005) (explaining that courts in this Circuit presume that agency action is reviewable); Teva Pharm. USA, Inc. v. Sebelius, 595 F.3d 1303, 1308 (D.C. Cir.2010) (when assessing ripeness, courts "probe[] the fitness for review of the legal issue presented, along with (in at least some cases) 'the hardship to the parties of withholding court consideration'" (quoting Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003)). Accordingly, the Court finds that final agency action has occurred.

---

[8] The Presidio Industrial "Park is less than one mile from the [PFCP] and behind the Cibolo Creek right levee." Kennedy Decl. ¶ 12.

16

### 2.    IIRIRA Jurisdiction-Stripping Provision

The Court will next address whether the plaintiff may pursue its pre-waiver APA and ultra vires claims despite the IIRIRA's jurisdiction-stripping provision, § 102(c)(2)(A).  At the outset, the Court notes that the defendants are "not challenging the issue of jurisdiction[,]" Hr'g Tr. at 45:10–45:11, but because the Court must always assure itself of its jurisdiction, see NetworkIP, LLC v. Fed. Commc'n Comm'n, 548 F.3d 116, 120 (D.C. Cir. 2008) ("[i]t is axiomatic that subject matter jurisdiction may not be waived, and that courts may raise the issue sua sponte.") (citing Athens Cmty. Hosp., Inc. v. Schweiker, 686 F.2d 989, 992 (D.C.Cir.1982)), the Court will briefly discuss § 102(c)(2)(A) of the IIRIRA.

The jurisdiction-stripping provision of the IIRIRA "eliminates district courts' jurisdiction over all non-constitutional 'causes and claims arising from any action undertaken, or any decision made,' by the DHS Secretary" pursuant to his or her authority in § 102(c)(1) of the IIRIRA.  NABA, 977 F.3d at 1259 (quoting IIRIRA § 102(c)(2)(A)).  In North American Butterfly Association, the D.C. Circuit considered this provision and held that § 102(c)(2) did not strip courts of jurisdiction to consider "claims [that] predate[d] and d[id] not depend on the DHS Secretary's Waiver Determination, [as they] do not 'arise from' the DHS Secretary's waiver authority."  977 F.3d 1244, 1261 ((internal brackets omitted).  However, the Circuit explained that, on the merits, the plaintiff's statutory challenges, i.e., its NEPA and ESA claims, could not proceed in light of the Secretary of DHS's waiver that was issued "some ten months after [the plaintiff] sued DHS."  Id. at 1259, 1261.

The plaintiff argues that the Circuit's decision in North American Butterfly Association "is on all fours" with this case.  Hr'g Tr. at 37:2–37:3.  The Court agrees with the plaintiff that this case is similar to North American Butterfly because the plaintiff is challenging the pre-

17

waiver actions taken by the defendants, namely, among other things:  "award[ing] contracts for the construction of the wall throughout the Big Bend Sector"; having "contractors [ ] set up camp in an RV park in Presidio, [ ] approach[ing the plaintiff's] officials about leasing land and purchasing materials"; "actively clearing land and building offices"; "mobilizing heavy equipment, constructing and improving access roads, and mining gravel"; and entering "into massive construction contracts and obtain[ing] Rights of Entry for Construction."  Pl.'s Mem. at 19.  Thus, as to whether it has jurisdiction to consider the plaintiff's claims, the Court holds that Secretary Mullin's July 2 Waiver did not strip it of subject-matter jurisdiction over the plaintiff's pre-waiver claims.  However, for reasons detailed below, this case is also similar to North American Butterfly because Secretary Mullin's July 2 Waiver precludes the plaintiff from succeeding on the merits of its APA and ultra vires claims.

**B.      Likelihood of Success on the Merits**

The plaintiff contends that it is likely to succeed on the merits because the defendants' "Big Bend Sector construction violates the Rivers and Harbors Act by interfering with the Presidio levees without USACE permission."  Pl.'s Mem. at 16.  The plaintiff further argues that Congress did not intend for § 408(a) of the RHA to be "a 'legal requirement'" pursuant to the IIRIRA, and "thus [§ 408(a) of the RHA is] not waivable[,]" id., i.e., Secretary Mullin's July 2 Waiver has no effect on the prohibitions of the RHA § 408(a).  The defendants counter, arguing that the plaintiff's RHA claim "has no likelihood of success on the merits because the Secretary of Homeland Security waived the RHA requirements for the border barrier construction that will be executed in the Big Bend Sector."  Defs.' Opp'n at 7 (citing July 2 Waiver).  For the reasons below, the Court finds that there are at least two reasons why the plaintiff cannot succeed on the merits:  (1) because the plaintiff has not alleged, as it rightly cannot, that the defendants violated

18

§ 408(a) of the RHA at the time it filed its lawsuit; and (2) because the July 2 Waiver precludes the plaintiff's claims from succeeding so long as the waiver remains in effect.

As stated above, § 408(a) of the RHA is titled "[p]rohibitions and permissions" and provides that:

> [i]t shall not be lawful for any . . . persons to take possession of or make use of for any purpose, or build upon, alter, deface, destroy, move, injure, obstruct by fastening vessels thereto or otherwise, or in any manner whatever impair the usefulness of any . . . levee . . . or other work built by the United States, or . . . used in the construction of such work under the control of the United States, in whole or in part, for the preservation and improvement of any of its navigable waters or to prevent floods, . . . nor remove for ballast or other purposes any stone or other material composting such works.

However, the actions enumerated in the statute are not prohibited if the Secretary of the Army grants permission for the temporary or permanent occupation or use to any person or persons. 33 U.S.C. § 408(a).

The first reason that the plaintiff's pre-waiver claims are unlikely to succeed on the merits is because the plaintiff has not alleged that the defendants had committed any of the enumerated actions listed in § 408(a) in regards to the levee system at the time it filed its Complaint on June 17, 2026. See generally Compl. To the contrary, the plaintiffs concede that the defendants' officials "represented that work would commence [on the levee system] . . . in late summer or early fall." Pl.'s Mem. at 19. Nevertheless, the plaintiff argues that the defendants have acted contrary to the RHA based on their mere decision to construct "a new concrete border wall with bollards atop to replace the existing earthen levee wall in the PFCP [without receiving] Army authorization." Pl.'s Mem. at 17; id. at 1 (explaining that the defendants "have now decided to build a border wall through the Big Bend region of Texas"). But the expression of a decision to construct is not a prohibited action under § 408(a).

19

In fact, the plaintiff explains that "while [the defendants] ha[ve] not shared what [they] plan[] to do [ ] with the existing levee wall, its <u>decision</u> to supplant that wall is likely to involve 'destroying' portions of the levee or 'removing material composing such works.'" Id. (citation modified) (emphasis added) (quoting 33 U.S.C. § 408(a)).  The plaintiff further alleges that the defendants' construction "is also <u>expected</u> to 'alter,' 'obstruct,' and/or 'impair the usefulness of' the Cibolo Creek left and right levees." Id. at 17–18 (quoting Kennedy Decl. ¶¶45–46) (internal citation omitted) (emphasis added).  The plaintiff relies on evidence alleging that:  (1) "DHS has [ ] awarded contracts for the construction of the wall throughout the Big Bend Sector"; (2) "contractors have set up camp in an RV park in Presidio"; (3) the defendants have approached [the plaintiff's] officials about leasing land and purchasing materials for the purposes of construction"; (4) the defendants "are actively clearing land and building offices"; (5) "[s]urvey crews are operating around the PFCP, and, elsewhere in Big Bend"; (6) "contractors are mobilizing heavy equipment, constructing and improving access roads, and mining gravel"; and (7) the "[d]efendants have already entered into massive construction contracts and obtained Rights of Entry for Construction."  Pl.'s Mem. at 19.

But, conspicuously absent from the plaintiff's allegations is a claim that there has been any action that has actually impacted the levee system itself, or any action that has allegedly "impaired the usefulness of[,]" 33 U.S.C. § 408(a), the levee system.  Thus, the pre-waiver actions that the defendants have actually taken are not prohibited by § 408(a) of the RHA.[9]

---

[9] For this same reason, the plaintiff's <u>ultra vires</u> claim also fails.  The Supreme Court has "strictly limited nonstatutory ultra vires review."  <u>Nuclear Regul. Comm'n v. Texas</u>, 605 U.S. 665, 681 (2025).  Thus, <u>ultra vires</u> review "applies only when an agency has taken action entirely 'in excess of its delegated powers and contrary to a <u>specific prohibition</u>' in a statute."  Id. (emphasis in original) (quoting <u>Ry. Clerks v. Ass'n for Benefit of Non-cont. Emps.</u>, 380 U.S. 650, 660 (1965)).  Additionally, "[u]ltra vires review is also unavailable if, as is usually the case, a statutory review scheme provides aggrieved persons 'with a meaningful and adequate opportunity for judicial review,' or if a statutory review scheme forecloses all other forms of judicial review."  Id. (quoting <u>Board of Governors of the Fed. Rsrv. Sys. v. MCorp Financial, Inc.</u>, 502 U.S. 32, 43 (1991)); <u>see</u> NABA, 977 F.3d at 1262
(continued . . .)

Therefore, the Court may not grant the plaintiff any relief from pre-waiver actions because the only pre-waiver actions that have been taken are not covered by the statutory provision the plaintiff challenges, i.e., RHA § 408(a); 5 U.S.C. § 706(2).

The second reason why the plaintiff's claims are not likely to succeed on the merits is because Secretary Mullin's July 2 Waiver provides the defendants with an affirmative defense against any action taken to the levee system without the Secretary of Army's permission as of July 2, 2026. The plaintiff argues that the July 2 Waiver has no effect on § 408(a) of the RHA because § 408(a) is a "prohibition" and not a "legal requirement" pursuant to IIRIRA § 102(c)(1). See Pl.'s Reply at 2–3; see also Pl.'s Mem. at 20–21. The Court disagrees with the plaintiff's interpretation of § 408(a) and finds that although § 408(a) is titled as a "prohibition" it clearly contains a "legal requirement" as well.

As previously indicated, Section 408(a) states that

> [i]t shall not be lawful for any . . . persons . . . in any manner whatever impair the usefulness of any . . . levee . . . Provided, That the Secretary of the Army may, on the recommendation of the Chief of Engineers, grant permission for the temporary occupation or use of any of the aforementioned public works when in his judgment such occupation or use will not be injurious to the public interest: Provided further, That the Secretary may, on the recommendation of the Chief of Engineers, grant permission for the alteration or permanent occupation or use of any of the aforementioned public works when in the judgment of the Secretary such occupation or use will not be injurious to the public interest and will not impair the usefulness of such work.

---

(. . . continued)

("Ultra vires review 'is intended to be of extremely limited scope,' and it 'represents a more difficult course than would review under the'" APA (quoting 5 U.S.C. § 706).

Because, here, the defendants had not taken any action that actually impacted the levee system at the time that the plaintiff filed its Complaint, and still have not taken any action that has impacted the levee system at the time the plaintiff's motion is being resolved, the defendants have plainly not acted "contrary to" § 408 of the RHA. Cf. NABA, 977 F.3d at 1263 (finding that the appellant did "not establish[] that the pre-waiver consultation DHS conducted fell so far short as to render it ultra vires"); McAleenan, 404 F. Supp. 3d at 240 ("[P]laintiffs cannot press ultra vires claims in federal court, nor do federal courts have jurisdiction to consider such claims, simply and solely because those claims are not constitutional challenges.").

33 U.S.C. § 408(a). The plaintiff does not focus on the intent of both the RHA and the IIRIRA, but instead references other statutes to suggest that when Congress intends to create a "legal requirement" rather than a "prohibition," it does so clearly and explicitly. See Pl.'s Reply at 2–4. However, the Court need not parse through these examples because the plain language of § 408(a) of the RHA clearly includes both a "prohibition," i.e., that no person "in any manner whatever [shall] impair the usefulness of any . . . levee," and a "legal requirement," i.e., that a person cannot do an otherwise prohibited act unless they receive "permission for the temporary occupation or use of any of the aforementioned public works." See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms") (internal quotations omitted)); see also Caminetti v. United States, 242 U.S. 470, 485 (1917) ("It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms."). If the Court were to read § 408 as only a "prohibition" as the plaintiff contends it should, then there would be no practical effect of the second half of the provision which requires that persons obtain permission from the Secretary of Army before taking actions. See Mercy Hosp., Inc. v. Azar, 891 F.3d 1062, 1068 (D.C. Cir. 2018) (explaining that courts "presume that Congress did not include words that have no effect, and so [courts] generally avoid a reading that renders some words altogether redundant") (internal quotations omitted)).

To be sure, the legislative history bolsters the Court's understanding of the interplay between the IIRIRA and the RHA. See Tataranowicz v. Sullivan, 959 F.2d 268, 276 (D.C. Cir.

22

1992) ("[C]ongressional intent can be understood only in light of the context in which Congress enacted a statute and of the policies underlying its enactment."). In 2016, § 408(a) of the RHA was amended and the title "Prohibitions and Permissions" was added. See Water Infrastructure Improvements for the Nation Act, § 1156, Pub. L. 114-322, 130 Stat. 1628 (Dec. 16, 2016).[10] Before it was amended, subsection (a) did not have a title and started by simply stating: "That it shall not be lawful." Id.

When reviewing the legislative history of the IIRIRA, it is clear that Congress did not intend to limit the Secretary of DHS's waiver authority. As was set forth in an opinion by now-Justice Brown Jackson when she was a member of this Court—"[a]t the time the IIRIRA was enacted, certain environmental statutes were chief among the legal impediments to the rapid construction of the physical barriers and roads that the statute prescribed—specifically, the Endangered Species Act [('ESA')] and the National Environmental Policy Act [('NEPA')]." McAleenan, 404 F. Supp. 3d at 228. So, in order to ensure the expeditious construction of physical barriers and roads in highly trafficked areas at the border, Congress waived the requirements of both the ESA and NEPA. Id. However, "[b]y 2005, it had become clear that, [d]espite the existing waiver provision," there were "[c]ontinued delays caused by litigation" and Congress expanded the Secretary of DHS's authority. Id. (internal citation and quotations omitted). To address these delays, "Congress amended the IIRIRA's waiver provision to permit the DHS Secretary to waive all legal requirements that can impede expeditious construction of border barriers." Id. (citing IIRIRA § 102(c)(1)). In doing so, Congress expressed its intent to

---

[10] Although not directly related to the plaintiff's claims, the Court notes one interesting piece of legislative history. In reviewing the Senate Report that was issued when Congress amended this statute, Senator Jim Inhofe, a member of the Committee on Environment and Public Works, submitted that "[u]nder the Corps' implementation of the statute, non-federal entities seeking to alter, use, or cross a federal water resources project must obtain permission from the Secretary (known as a section 408 permit)." S. Rep. No. 114-283 at 7 (2016) (emphasis added). Accordingly, the legislative history of § 408(a)'s amendment, seems to suggest that certain members of Congress did not intend for the entirety of § 408 to apply to federal entities.

"authorize the waiver of 'all laws' rather than 'all legal requirements' in order to 'clarify its intent that the Secretary's discretionary waiver authority extends to any local, state, or federal statute, regulation, or administrative order that could impede expeditious construction of border security infrastructure." Id. (citation modified) (quoting H.R. Rep. No. 109-72, at 171). And, to further inhibit construction delays, Congress restricted judicial review of the Secretary of DHS's waiver decision by limiting appellate review to the Supreme Court, bypassing the circuit courts. See id.; NABA, 977 F.3d at 1261 ("Section 102(c)(2)(A) has the intended effect of aiding expedition only to the extent its text commands—by eliminating judicial review of claims flowing from a waiver decision."). Therefore, contrary to the plaintiff's position, the legislative history of IIRIRA § 102(c)(1) suggests that instead of limiting the Secretary of DHS's waiver authority, Congress only expanded it with each amendment to the IIRIRA.

Thus, the Court must find that the plain language of § 408(a) of the RHA clearly provides a "legal requirement" within the context of IIRIRA § 102(c)(1), and the legislative history of the IIRIRA only underscores this finding. Accordingly, Secretary Mullin's July 2 Waiver has full effect as applied to § 408(a) of the RHA.[11]

Finally, although the plaintiff acknowledges that it is not challenging the July 2 Waiver, see Pl.'s Reply at 7 (stating that the plaintiff's claims "challenge the decision to construct a

---

[11] The plaintiff also argues that interpreting § 102(c)(1) of the IIRIRA to allow the waiver of the prohibitions in the RHA could lead to absurd results by, for example, allowing the Secretary to waive criminal restrictions for federal officials and contractors if it "ensure[d] [the] expeditious construction" of the border barriers. See Pl.'s Reply at 5–6 (quoting IIRIRA § 102(c)(1)). However valid the plaintiff's hypothetical examples might be, the Court is restrained by the plain language of Congress—and in this case—the clear legislative intent of IIRIRA § 102(c)(1), as made clear by another former member of this court and the D.C. Circuit. See e.g., Camreta v. Greene, 563 U.S. 692, 705 (2011) ("[A] longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them"); see also NABA, 977 F.3d at 1261 ("Policy arguments about the assertedly dilatory effect of judicial review the text leaves undisturbed cannot overcome the statute's plain language, which is our primary guide to Congress' preferred policy") (internal brackets and quotations omitted); McAleenan, 404 F. Supp. 3d at 241 ("[H]owever rational Plaintiffs' concerns may be, such matters must be taken up with Congress. Here, Plaintiffs cannot reasonably assert that Congress must have meant something different than what its statute plainly says.").

'Smart Wall' in Big Bend in violation of Section 408(a), not the July 2 Waiver"), the plaintiff argues that "DHS's belated waiver does not, and could not, relieve [the d]efendants of their obligation to comply with Section 408(a)."  Pl.'s Reply at 1.  However, the Circuit and at least one other member of this Court have already decided that IIRIRA § 102(c)(1)'s waiver authority is not only clear, but also is expansive.  See NABA, 977 F.3d at 1261 ("We hold that the Secretary's Waiver Determination defeats the statutory claims"); McAleenan, 404 F. Supp. at 238 ("Indeed, the plain language of the statute leaves no doubt that, except for review of alleged violations of the Constitution, Congress intended to preclude completely judicial review of agency actions taken, or decisions made, pursuant to section 102's waiver provision, including the contention that a particular waiver decision is not authorized by statute.").  Accordingly, the July 2 Waiver defeats any claim that the defendants violated § 408(a) of the RHA as of July 2, 2026.

For all the foregoing reasons, the Court must conclude that the plaintiff's pre-waiver—and to the extent they challenge the July 2 Waiver—post-waiver claims challenging the defendants' actions pursuant to § 408(a) of the RHA fail and therefore the plaintiff is unlikely to succeed on the merits.  And, because the plaintiff has no likelihood of succeeding on the merits, the Court need not balance the remaining Winter factors.  See Ark. Dairy Co-op Ass'n, Inc., 573 F.3d at 832 (holding that because the appellants "have shown no likelihood of success on the merits of their contention [that] the Secretary exceeded his powers[,] . . . [the] court need not proceed to review the other three preliminary injunction factors"); Nat'l Treasury Emps. Union v. Vought, 149 F.4th 762, 774 (D.C. Cir. 2025) ("[I]f a court concludes that a claim fails as a

25

matter of law—on a point of jurisdiction or merits—then a preliminary injunction is inappropriate.").[12]

## IV.   CONCLUSION

For the foregoing reasons, despite the understandable concerns expressed by the plaintiff regarding the harms it and the plaintiff's residents might sustain by the potential construction of the Smart Wall, the Court is compelled to deny the plaintiff's motion for a stay under 5 U.S.C. § 705 and/or a preliminary injunction.

**SO ORDERED** this 2nd day of August, 2026.[13]

REGGIE B. WALTON
United States District Judge

---

[12] Even if the Court were to address the plaintiff's argument that irreparable harm would likely occur in the absence of a stay and/or a preliminary injunction, the Court finds it unlikely, if not impossible, for the plaintiff to show that the defendants' construction will likely cause irreparable harm due to its impact on the levee system because the plaintiff admits, as it must, that the defendants do not yet have a final design for their planned construction. See Defs.' Opp'n at 10 (representing that the "[d]efendants do not have a final design plan for the border wall construction near the levees" (citing Enriquez Decl. ¶ 15)); Pl.'s Reply at 8 ("While [the d]efendants argue that CBP could still change its construction design, that is unlikely and does not mitigate the harm caused by CBP's repeated representations that it is replacing the earthen levee with a concrete wall"); Hr'g Tr. at 19:7–19:13 (responding to the Court's question regarding whether the plaintiff believes that the defendant has in fact created a final design for the construction, plaintiff's counsel stated that they do not "believe the Court needs to find that there's been a final design[,]" but instead the Court should consider "whether there has been a decision to construct and replace the levee wall with the concrete border wall."). Accordingly, an irreparable harm finding would be based on nothing more than speculation considering the current record.

[13] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.